## HENSLEY ET AL. *v.* ECKERHART ET AL.

No. 81–1244.   Argued November 3, 1982—Decided May 16, 1983

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, REHNQUIST, and O'CONNOR, JJ., joined.   BURGER, C. J., filed a concurring opinion, *post*, p. 440.   BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL, BLACK-MUN, and STEVENS, JJ., joined, *post*, p. 441.

*Michael L. Boicourt*, Assistant Attorney General of Missouri, argued the cause for petitioners. With him on the brief was *John Ashcroft*, Attorney General.

*Stanley J. Eichner* argued the cause and filed a brief for respondents.*

---

*\*Robert E. Williams, Douglas S. McDowell*, and *Lorence L. Kessler* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

*Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston, Steven L. Winter, Norman J. Chachkin*, and *E. Richard Larson* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., et al. as *amici curiae* urging affirmance.

Briefs of *amici curiae* were filed for the State of Pennsylvania et al. by *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, and *Andrew S. Gordon* and *Allen C. Warshaw*, Deputy Attorneys General, *Charles A. Graddick*, Attorney General of Alabama, *Wilson L. Condon*, Attorney General of Alaska, *Robert K. Corbin*, Attorney General of Arizona, and *Anthony B. Ching*, Solicitor General, *John Steven Clark*, Attorney General of Arkansas, *George Deukmejian*, Attorney General of California, *J.D. MacFarlane*, Attorney General of Colorado, *Richard S. Gebelein*, Attorney General of Delaware, *Jim Smith*, Attorney General of Florida, *Michael J. Bowers*, Attorney General of Georgia, *Tany S. Hong*, Attorney General of Hawaii, *David H. Leroy*, Attorney General of Idaho, *Tyrone C. Fahner*, Attorney General of Illinois, *Linley E. Pearson*, Attorney General of Indiana, *Thomas J. Miller*, Attorney General of Iowa, *Robert T. Stephan*, Attorney General of Kansas, *Steven L. Beshear*, Attorney General of Kentucky, *James E. Tierney*, Attorney General of Maine, *Stephen H. Sachs*, Attorney General of Maryland, *Francis X. Bellotti*, Attorney General of Massachusetts, *Frank J. Kelley*, Attorney General of Michigan, *Warren R. Spannaus*, Attorney General of Minnesota, *William A. Allain*, Attorney General of Mississippi, *Paul L. Douglas*, Attorney General of Nebraska, *Richard H. Bryan*, Attorney General of Nevada, *Gregory H. Smith*, Attorney General of New Hampshire, *Irwin I. Kimmelman*, Attorney General of New Jersey, *Jeff Bingaman*, Attorney General of New Mexico, *Rufus L. Edmisten*, Attorney General of North Carolina, *Robert O. Wefald*, Attorney General of North Dakota, *William J. Brown*, Attorney General of Ohio, *Jan Eric Cartwright*, Attorney General of Oklahoma, *Hector Reichard*, Attorney General of Puerto Rico, *Daniel R. McLeod*, Attorney General of South Carolina, *Mark D. Meierhenry*, Attorney General of South Dakota, *William M. Leech, Jr.*, Attorney General of Tennessee, *Mark White*, Attorney General of Texas, *David L. Wil-*

JUSTICE POWELL delivered the opinion of the Court.

Title 42 U. S. C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The issue in this case is whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims.

I

A

Respondents brought this lawsuit on behalf of all persons involuntarily confined at the Forensic Unit of the Fulton State Hospital in Fulton, Mo. The Forensic Unit consists of two residential buildings for housing patients who are dangerous to themselves or others. Maximum-security patients are housed in the Marion O. Biggs Building for the Criminally Insane. The rest of the patients reside in the less restrictive Rehabilitation Unit.

In 1972 respondents filed a three-count complaint in the District Court for the Western District of Missouri against petitioners, who are officials at the Forensic Unit and members of the Missouri Mental Health Commission. Count I challenged the constitutionality of treatment and conditions at the Forensic Unit. Count II challenged the placement of patients in the Biggs Building without procedural due process. Count III sought compensation for patients who performed institution-maintaining labor.

Count II was resolved by a consent decree in December 1973. Count III largely was mooted in August 1974 when

kinson, Attorney General of Utah, *John J. Easton*, Attorney General of Vermont, *Gerald L. Baliles*, Attorney General of Virginia, *Kenneth O. Eikenberry*, Attorney General of Washington, *Chauncey H. Browning*, Attorney General of West Virginia, *Bronson C. La Follette*, Attorney General of Wisconsin, and *Steven F. Freudenthal*, Attorney General of Wyoming; and for the American Bar Association by *David R. Brink* and *M. D. Taracido*.

petitioners began compensating patients for labor pursuant to the Fair Labor Standards Act, 29 U. S. C. § 201 *et seq.* In April 1975 respondents voluntarily dismissed the lawsuit and filed a new two-count complaint. Count I again related to the constitutionality of treatment and conditions at the Forensic Unit. Count II sought damages, based on the Thirteenth Amendment, for the value of past patient labor. In July 1976 respondents voluntarily dismissed this back-pay count. Finally, in August 1977 respondents filed an amended one-count complaint specifying the conditions that allegedly violated their constitutional right to treatment.

In August 1979, following a three-week trial, the District Court held that an involuntarily committed patient has a constitutional right to minimally adequate treatment. 475 F. Supp. 908, 915 (1979). The court then found constitutional violations in five of six general areas: physical environment; individual treatment plans; least restrictive environment; visitation, telephone, and mail privileges; and seclusion and restraint.[1] With respect to staffing, the sixth general area,

---

[1] Under "physical environment" the court found that certain physical aspects of the Biggs Building were not minimally adequate. 475 F. Supp., at 916–919.

Under "individual treatment plans" the court found that the existing plans were adequate, but that the long delay in preparation of initial plans after patients were admitted and the lack of regular review of the plans operated to deny patients minimally adequate plans. *Id.*, at 921–922.

Under "least restrictive environment" the court found unconstitutional the delay in transfer of patients from the Biggs Building to the Rehabilitation Unit following a determination that they no longer needed maximum-security confinement. *Id.*, at 922–923.

Under "visitation, telephone and mail" the court found that the visitation and telephone policies at the Biggs Building were so restrictive that they constituted punishment and therefore violated patients' due process rights. *Id.*, at 923–925.

Under "seclusion and restraint" the court rejected respondents' claim that patients were given excessive medication as a form of behavior control. The court then found that petitioners' practices regarding seclusion and physical restraint were not minimally adequate. *Id.*, at 925–928.

the District Court found that the Forensic Unit's staffing levels, which had increased during the litigation, were minimally adequate. *Id.*, at 919–920. Petitioners did not appeal the District Court's decision on the merits.

## B

In February 1980 respondents filed a request for attorney's fees for the period from January 1975 through the end of the litigation. Their four attorneys claimed 2,985 hours worked and sought payment at rates varying from $40 to $65 per hour. This amounted to approximately $150,000. Respondents also requested that the fee be enhanced by 30 to 50 percent, for a total award of somewhere between $195,000 and $225,000. Petitioners opposed the request on numerous grounds, including inclusion of hours spent in pursuit of unsuccessful claims.

The District Court first determined that respondents were prevailing parties under 42 U. S. C. § 1988 even though they had not succeeded on every claim. It then refused to eliminate from the award hours spent on unsuccessful claims:

> "[Petitioners'] suggested method of calculating fees is based strictly on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Under this method no consideration is given for the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, or the extent to which a party may prevail on various issues." No. 75–CV–87–C, p. 7 (WD Mo., Jan. 23, 1981), Record 220.

Finding that respondents "have obtained relief of significant import," *id.*, at 231, the District Court awarded a fee of $133,332.25. This award differed from the fee request in two respects. First, the court reduced the number of hours claimed by one attorney by 30 percent to account for his inex-

perience and failure to keep contemporaneous records. Second, the court declined to adopt an enhancement factor to increase the award.

The Court of Appeals for the Eighth Circuit affirmed on the basis of the District Court's memorandum opinion and order. 664 F. 2d 294 (1981). We granted certiorari, 455 U. S. 988 (1982), and now vacate and remand for further proceedings.

## II

In *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975), this Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary. In response Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H. R. Rep. No. 94–1558, p. 1 (1976). Accordingly, a prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S. Rep. No. 94–1011, p. 4 (1976) (quoting *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968)).[2]

The amount of the fee, of course, must be determined on the facts of each case. On this issue the House Report simply refers to 12 factors set forth in *Johnson* v. *Georgia High-*

---

[2] A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. See H. R. Rep. No. 94–1558, p. 7 (1976); *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").

*way Express, Inc.*, 488 F. 2d 714 (CA5 1974).[3]   The Senate Report cites to *Johnson* as well and also refers to three District Court decisions that "correctly applied" the 12 factors.[4]   One of the factors in *Johnson*, "the amount involved and the results obtained," indicates that the level of a plaintiff's success is relevant to the amount of fees to be awarded. The importance of this relationship is confirmed in varying degrees by the other cases cited approvingly in the Senate Report.

In *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974), aff'd, 550 F. 2d 464 (CA9 1977), rev'd on other grounds, 436 U. S. 547 (1978), the plaintiffs obtained a declaratory judgment, then moved for a preliminary injunction. After the defendants promised not to violate the judgment,

---

[3] The 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.   488 F. 2d, at 717–719.   These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).

[4] "It is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.   The appropriate standards, see *Johnson* v. *Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974); *Davis* v. *County of Los Angeles*, 8 E. P. D. ¶ 9444 (CD Cal. 1974); and *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483 (WDNC 1975).   These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.   In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'   *Davis, supra; Stanford Daily, supra* at 684."   S. Rep. No. 94–1011, p. 6 (1976).

the motion was denied. The District Court awarded attorney's fees for time spent pursuing this motion because the plaintiffs "substantially advanced their clients' interests" by obtaining "a significant concession from defendants as a result of their motion." 64 F. R. D., at 684.

In *Davis* v. *County of Los Angeles*, 8 E. P. D. ¶ 9444 (CD Cal. 1974), the plaintiffs won an important judgment requiring the Los Angeles County Fire Department to undertake an affirmative-action program for hiring minorities. In awarding attorney's fees the District Court stated:

> "It also is not legally relevant that plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case or upon which plaintiffs ultimately did not prevail. Since plaintiffs prevailed on the merits and achieved excellent results for the represented class, plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Id.*, at 5049.

Similarly, the District Court in *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483, 484 (WDNC 1975), based its fee award in part on a finding that "[t]he results obtained were excellent and constituted the total accomplishment of the aims of the suit," despite the plaintiffs' losses on "certain minor contentions."

In each of these three cases the plaintiffs obtained essentially complete relief. The legislative history, therefore, does not provide a definitive answer as to the proper standard for setting a fee award where the plaintiff has achieved only limited success. Consistent with the legislative history, Courts of Appeals generally have recognized the relevance of the results obtained to the amount of a fee award. They

have adopted varying standards, however, for applying this principle in cases where the plaintiff did not succeed on all claims asserted.[5]

In this case petitioners contend that "an award of attorney's fees must be proportioned to be consistent with the extent to which a plaintiff has prevailed, and only time reasonably expended in support of successful claims should be compensated." Brief for Petitioners 24. Respondents agree that a plaintiff's success is relevant, but propose a less stringent standard focusing on "whether the time spent prosecuting [an unsuccessful] claim in any way contributed to the ultimate results achieved." Brief for Respondents 46. Both parties acknowledge the discretion of the district court in this area. We take this opportunity to clarify the proper relationship of the results obtained to an award of attorney's fees.[6]

---

[5] Some Courts of Appeals have stated flatly that plaintiffs should not recover fees for any work on unsuccessful claims. See, e. g., Bartholomew v. Watson, 665 F. 2d 910, 914 (CA9 1982); Muscare v. Quinn, 614 F. 2d 577, 579–581 (CA7 1980); Hughes v. Repko, 578 F. 2d 483, 486–487 (CA3 1978). Others have suggested that prevailing plaintiffs generally should receive a fee based on hours spent on all nonfrivolous claims. See, e. g., Sherkow v. Wisconsin, 630 F. 2d 498, 504–505 (CA7 1980); Northcross v. Board of Educ. of Memphis City Schools, 611 F. 2d 624, 636 (CA6 1979), cert. denied, 447 U. S. 911 (1980); Brown v. Bathke, 588 F. 2d 634, 636–637 (CA8 1978). Still other Courts of Appeals have held that recovery of a fee for hours spent on unsuccessful claims depends upon the relationship of those hours expended to the success achieved. See, e. g., Copeland v. Marshall, 205 U. S. App. D. C. 390, 401–402, n. 18, 641 F. 2d 880, 891–892, n. 18 (1980) (en banc); Jones v. Diamond, 636 F. 2d 1364, 1382 (CA5) (en banc), cert. dism'd, 453 U. S. 950 (1981); Gurule v. Wilson, 635 F. 2d 782, 794 (CA10 1980) (opinion on rehearing); Lamphere v. Brown Univ., 610 F. 2d 46, 47 (CA1 1979).

[6] The parties disagree as to the results obtained in this case. Petitioners believe that respondents "prevailed only to an extremely limited degree." Brief for Petitioners 22. Respondents contend that they "prevailed on practically every claim advanced." Brief for Respondents 23. As discussed in Part IV, infra, we leave this dispute for the District Court on remand.

## III

### A

A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988.[7] The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau* v. *Helgemoe*, 581 F. 2d 275, 278–279 (CA1 1978).[8] This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable."

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

---

[7] As we noted in *Hanrahan* v. *Hampton*, 446 U. S. 754, 758, n. 4 (1980) *(per curiam)*, "[t]he provision for counsel fees in § 1988 was patterned upon the attorney's fees provisions contained in Titles II and VII of the Civil Rights Act of 1964, 42 U. S. C. §§ 2000a–3(b) and 2000e–5(k), and § 402 of the Voting Rights Act Amendments of 1975, 42 U. S. C. § 1973*l*(e)." The legislative history of § 1988 indicates that Congress intended that "the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." S. Rep. No. 94–1011, p. 4 (1976). The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party."

[8] See also *Busche* v. *Burkee*, 649 F. 2d 509, 521 (CA7 1981), cert. denied, 454 U. S. 897 (1981); *Sethy* v. *Alameda County Water Dist.*, 602 F. 2d 894, 897–898 (CA9 1979) *(per curiam)*. Cf. *Taylor* v. *Sterrett*, 640 F. 2d 663, 669 (CA5 1981) ("[T]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought").

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S. Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 401, 641 F. 2d 880, 891 (1980) (en banc) (emphasis in original).

## B

The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."[9] This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the

---

[9] The district court also may consider other factors identified in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714, 717–719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. See *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 400, 641 F. 2d 880, 890 (1980) (en banc).

claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis* v. *County of Los Angeles*, 8 E. P. D., at 5049. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.[10]

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis* v. *County of Los Angeles, supra,* at 5049. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.[11]

---

[10] If the unsuccessful claim is frivolous, the defendant may recover attorney's fees incurred in responding to it. See n. 2, *supra.*

[11] We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had respondents prevailed on only one of their six general claims, for example the claim that petitioners' visitation, mail, and telephone policies were overly restrictive, see n. 1, *supra*, a fee award based on the claimed hours clearly would have been excessive.

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce

prevailed upon." Record 220. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

## C

A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked, see *supra*, at 434, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.[12]

We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

---

[12] We recognize that there is no certain method of determining when claims are "related" or "unrelated." Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures. See *Nadeau* v. *Helgemoe*, 581 F. 2d 275, 279 (CA1 1978) ("As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims").

## IV

In this case the District Court began by finding that "[t]he relief [respondents] obtained at trial was substantial and certainly entitles them to be considered prevailing . . . , without the need of examining those issues disposed of prior to trial in order to determine which went in [respondents'] favor." Record 219. It then declined to divide the hours worked between winning and losing claims, stating that this fails to consider "the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, or the extent to which a party may prevail on various issues." *Id.*, at 220. Finally, the court assessed the "amount involved/ results obtained" and declared: "Not only should [respondents] be considered prevailing parties, they are parties who have obtained relief of significant import. [Respondents'] relief affects not only them, but also numerous other institutionalized patients similarly situated. The extent of this relief clearly justifies the award of a reasonable attorney's fee." *Id.*, at 231.

These findings represent a commendable effort to explain the fee award. Given the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues.[13] And given the findings with respect to the level of respondents' success, the District Court's award may be consistent with our holding today.

We are unable to affirm the decisions below, however, because the District Court's opinion did not properly consider the relationship between the extent of success and the amount of the fee award.[14] The court's finding that "the [sig-

---

[13] In addition, the District Court properly considered the reasonableness of the hours expended, and reduced the hours of one attorney by 30 percent to account for his inexperience and failure to keep contemporaneous time records.

[14] The District Court expressly relied on *Brown* v. *Bathke*, 588 F. 2d 634 (CA8 1978), a case we believe understates the significance of the results

nificant] extent of the relief clearly justifies the award of a reasonable attorney's fee" does not answer the question of what is "reasonable" in light of that level of success.[15] We

obtained. In that case a fired schoolteacher had sought reinstatement, lost wages, $25,000 in damages, and expungement of derogatory material from her employment record. She obtained lost wages and the requested expungement, but not reinstatement or damages. The District Court awarded attorney's fees for the hours that it estimated the plaintiff's attorney had spent on the particular legal issue on which relief had been granted. The Eighth Circuit reversed. It stated that the results obtained may be considered, but that this factor should not "be given such weight that it reduces the fee awarded to a prevailing party below the 'reasonable attorney's fee' authorized by the Act." *Id.*, at 637. The court determined that the unsuccessful issues that had been raised by the plaintiff were not frivolous, and then remanded the case to the District Court. *Id.*, at 638.

Our holding today differs at least in emphasis from that of the Eighth Circuit in *Brown*. We hold that the extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded. In *Brown* the plaintiff had lost on the major issue of reinstatement. The District Court found that she had "'obtained only a minor part of the relief she sought.'" *Id.*, at 636. In remanding the Eighth Circuit implied that the District Court should not withhold fees for work on unsuccessful claims unless those claims were frivolous. Today we hold otherwise. It certainly was well within the *Brown* District Court's discretion to make a limited fee award in light of the "minor" relief obtained.

[15] The dissent errs in suggesting that the District Court's opinion would have been acceptable if merely a single word had been changed. See *post*, at 451. We note, for example, that the District Court did not determine whether petitioners' unilateral increase in staff levels was a result of the litigation. Petitioners asserted that 70%–80% of the attorney time in the case was spent on the question of staffing levels at the Forensic Unit. Memorandum in Opposition to Plaintiffs' Request for an Award of Attorneys' Fees, Expenses and Costs 30. If this is true, and if respondents' lawsuit was not a catalyst for the staffing increases, then respondents' failure to prevail on their challenge to the staffing levels would be material in determining whether an award based on over 2,500 hours expended was justifiable in light of respondents' actual success. The District Court's failure to consider this issue would not have been obviated by a mere conclusory statement that this fee was reasonable in light of the success obtained.

emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.

## V

We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring.

I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought. It would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim under 42 U. S. C. § 1988 as a lawyer would be required to show if his own client challenged the fees. A district judge may not, in my view, authorize the payment of attorney's fees unless the

attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.

A claim for legal services presented by the prevailing party to the losing party pursuant to § 1988 presents quite a different situation from a bill that a lawyer presents to his own client. In the latter case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate "billing judgment," *ante*, at 434, and unless challenged by the client, the billing does not need the kind of extensive documentation necessary for a payment under § 1988. That statute requires the losing party in a civil rights action to bear the cost of his adversary's attorney and there is, of course, no relationship of trust and confidence between the adverse parties. As a result, the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, concurring in part and dissenting in part.

The Court today holds that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988." *Ante*, at 440. I agree with the Court's carefully worded statement because it is fully consistent with the purpose of § 1988 as well as the interpretation of that statute reached by the Courts of Appeals. I also agree that plaintiffs may receive attorney's fees for cases in which " 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit,' " *ante*, at 433, quoting *Nadeau* v. *Helgemoe*, 581 F. 2d 275, 278–279 (CA1 1978), and that plaintiffs may receive fees for all hours reasonably spent litigating

a case even if they do not prevail on every claim or legal theory, see *ante,* at 434–435.

Regretfully, however, I do not join the Court's opinion. In restating general principles of the law of attorney's fees, the Court omits a number of elements crucial to the calculation of attorney's fees under § 1988. A court that did not take account of those additional elements in evaluating a claim for attorney's fees would entirely fail to perform the task Congress has entrusted to it, a task that Congress—I think rightly—has deemed crucial to the vindication of individuals' rights in a society where access to justice so often requires the services of a lawyer.

Furthermore, whether one considers all the relevant factors or merely the relationship of fees to results obtained, the District Court in this case awarded a fee that was well within the court's zone of discretion under § 1988, and it explained the amount of the fee meticulously. The Court admits as much. See *ante,* at 438. Vacating a fee award such as this and remanding for further explanation can serve only as an invitation to losing defendants to engage in what must be one of the least socially productive types of litigation imaginable: appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee. Such appeals, which greatly increase the costs to plaintiffs of vindicating their rights, frustrate the purposes of § 1988. Where, as here, a district court has awarded a fee that comes within the range of possible fees that the facts, history, and results of the case permit, the appellate court has a duty to affirm the award promptly.

I

In *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240, 269 (1975), this Court held that it was beyond the competence of judges to "pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others." Congress, however, has full authority to make such decisions, and it responded to the chal-

lenge of *Alyeska* by doing the "picking and choosing" itself. Its legislative solution legitimates the federal common law of attorney's fees that had developed in the years before *Alyeska*[1] by specifying when and to whom fees are to be available.[2] Section 1988 manifests a finely balanced con-

---

[1] See cases cited 421 U. S., at 284–285 (MARSHALL, J., dissenting). See also S. Rep. No. 94–1011, p. 6 (1976) ("This bill creates no startling new remedy—it only meets the technical requirements that the Supreme Court has laid down if the Federal courts are to continue the practice of awarding attorneys' fees which had been going on for years prior to the Court's . . . decision").

[2] Because of this selectivity, statutory attorney's fee remedies such as those created by § 1988 and its analogues bear little resemblance to either common-law attorney's fee rule: the "American Rule," under which the parties bear their own attorney's fees no matter what the outcome of a case, or the "English Rule," under which the losing party, whether plaintiff or defendant, pays the winner's fees. They are far more like new causes of action tied to specific rights than like background procedural rules governing any and all litigation. This fundamental distinction has often been ignored. See *ante*, at 429; *Alyeska Pipeline Co.* v. *Wilderness Society*, 421 U. S., at 247.

For certain rights selected by Congress, § 1988 facilitates litigation by plaintiffs and encourages them to reject half-measure compromises, see *New York Gaslight Club* v. *Carey*, 447 U. S. 54, 63 (1980); *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968) *(per curiam)*, while at the same time it gives defendants strong incentives to avoid arguable civil rights violations in the first place and to make concessions in hope of an early settlement, see *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 407, 641 F. 2d 880, 897 (1980) (en banc); *Dennis* v. *Chang*, 611 F. 2d 1302, 1307 (CA9 1980). Civil rights plaintiffs with meritorious claims "appear before the court cloaked in a mantle of public interest." H. R. Rep. No. 94–1558, p. 6 (1976) (citing *United States Steel Corp.* v. *United States*, 519 F. 2d 359, 364 (CA3 1975)). Congress has granted them a statutory right to attorney's fees in addition to any rights they have under fees rules of general applicability. *Newman* v. *Piggie Park Enterprises, supra*, at 402, n. 4; see *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 416–417 (1978). Both of the traditional rules reflect the assumption that plaintiff and defendant approach litigation on a more or less equal basis. They leave the parties to private, essentially symmetrical calculations as to whether litigation—including the attorney's fees it entails—represents a better investment than compromise and settlement or simply acceding to the opposing party's demands. Of course, the parties approach those cal-

gressional purpose to provide plaintiffs asserting specified federal rights with "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S. Rep. No. 94–1011, p. 6 (1976) (hereinafter Senate Report); cf. H. R. Rep. No. 94–1558, p. 9 (1976) (hereinafter House Report).[3] The Court today emphasizes those aspects of judicial discretion necessary to prevent "windfalls," but lower courts must not forget the need to ensure that civil rights plaintiffs with bona fide claims are able to find lawyers to represent them.

In enacting § 1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned.[4]

---

culations with different risk preferences and financial positions, and the principal difference between the two rules is that the English Rule, by enhancing the cost of losing after litigation, gives the party with superior ability to undertake risk more of a tactical advantage than does the American Rule. But—in theory, at least—neither common-law rule systematically favors plaintiffs over defendants, or vice versa.

[3] The portion of § 1988 at issue in this case states:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of [Title 42], title IX of Public Law 92–318 . . . or title VI of the Civil Rights Act of 1964, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641.

Section 1988 was drafted based on Congress' experience with over 50 fee-shifting provisions in other statutes, dating back to Reconstruction-era civil rights statutes, see Senate Report 3–4; *Alyeska Pipeline Co.* v. *Wilderness Society, supra,* at 260, n. 33.

[4] For most private-law claims, the public interest lies primarily in providing a neutral, easily available forum for resolving the dispute, and a plaintiff's choice to compromise a claim or to forgo it altogether, based on his private calculation that what he stands to gain does not justify the cost of pursuing his claim, is of little public concern. But, in enacting § 1988, Congress determined that the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over

"All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

"In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court." Senate Report 2.

See House Report 1–3.[5] Congress could, of course, have provided public funds or Government attorneys for litigating private civil rights claims, but it chose to "limi[t] the growth of the enforcement bureaucracy," Senate Report 4, by con-

---

and above the value of a civil rights remedy to a particular plaintiff. Simply put, Congress decided that it would be better to have more vigorous enforcement of civil rights laws than would result if plaintiffs were left to finance their own cases.

[5] Congress had other reasons as well to believe that civil rights plaintiffs would often be unable to pay for the desirable level of law enforcement themselves. Civil rights remedies often benefit a large number of persons, many of them not involved in the litigation, making it difficult both to evaluate what a particular lawsuit is really worth to those who stand to gain from it and to spread the costs of obtaining relief among them. Cf. *Hall* v. *Cole*, 412 U. S. 1, 5–7 (1973); *Mills* v. *Electric Auto-Lite Co.*, 396 U. S. 375, 396 (1970) (finding nonstatutory awards under traditional "common fund" exception to the American Rule appropriate for this reason). This problem is compounded by the facts that monetary damages are often not an important part of the recovery sought under the statutes enumerated in § 1988, cf. *Newman* v. *Piggie Park Enterprises, Inc.*, *supra*, at 402, and that doctrines of official immunity often limit the availability of damages against governmental defendants, see House Report 9, and n. 17.

tinuing to rely on the private bar[6] and by making defendants bear the full burden of paying for enforcement of their civil rights obligations.[7]

Yet Congress also took steps to ensure that § 1988 did not become a "relief fund for lawyers." 122 Cong. Rec. 33314 (1976) (remarks of Sen. Kennedy). First, it limited fee awards to "prevailing" plaintiffs, rather than allowing fees for anyone who litigated a bona fide claim in good faith, see House Report 6–8, and it expressly reaffirmed the common-law doctrine that attorney's fees could be awarded *against* plaintiffs who litigated frivolous or vexatious claims, see *id.*, at 6–7; *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 416–417 (1978). It also left district courts with discretion to set the precise award in individual cases and to deny fees entirely in "special circumstances" when an award would be "unjust," even if the plaintiff prevailed, see Senate Report 4; House Report 6; *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968) *(per curiam).*

> "[A] key feature of the bill is its mandate that fees are only to be allowed in the discretion of the court. Congress has passed many statutes *requiring* that fees be awarded to a prevailing party. Again, the Committee

---

[6] This case reflects the fact that Congress has provided public funding to some limited extent through a number of programs such as the Legal Services Corporation: respondents' attorneys are associated with Legal Services of Eastern Missouri, Inc. They may not, however, use the money they receive from the Federal Government for cases in which fees are available. See 42 U. S. C. § 2996f(b)(1). For purposes of § 1988, such attorneys should be paid as if they were in private practice, in order both to avoid windfalls to defendants and to free public resources for other types of law enforcement. See *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S., at 70, n. 9; *Copeland* v. *Marshall*, 205 U. S. App. D. C., at 409–410, 641 F. 2d, at 899–900; *Rodriguez* v. *Taylor*, 569 F. 2d 1231, 1248 (CA3 1977).

[7] Congress' imposition of liability for attorney's fees under § 1988 also represents a decision to abrogate the sovereign immunity of the States in order to accomplish the purposes of the Fourteenth Amendment. See Senate Report 5; *Fitzpatrick* v. *Bitzer*, 427 U. S. 445 (1976); *Maher* v. *Gagne*, 448 U. S. 122, 128–129 (1980).

adopted a more moderate approach here by leaving the matter to the discretion of the judge, guided of course by the case law interpreting similar attorney's fee provisions." House Report 8 (footnote omitted).

At a number of points, the legislative history of § 1988 reveals Congress' basic goal that attorneys should view civil rights cases as essentially equivalent to other types of work they could do, even though the monetary recoveries in civil rights cases (and hence the funds out of which their clients would pay legal fees) would seldom be equivalent to recoveries in most private-law litigation. Thus, the Senate Report specifies that fee awards under § 1988 should be equivalent to fees "in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." Senate Report 6. Furthermore, "counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Ibid.*

As nearly as possible, market standards should prevail, for that is the best way of ensuring that competent counsel will be available to all persons with bona fide civil rights claims. This means that judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases, see generally *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 400–410, 641 F. 2d 880, 890–900 (1980) (en banc), both by awarding them market-rate fees, *id.*, at 409, 641 F. 2d, at 899, and by awarding fees only for time *reasonably* expended, *id.*, at 391, 641 F. 2d, at 881. If attorneys representing civil rights plaintiffs do not expect to receive full compensation for their efforts when they are successful, or if they feel they can "lard" winning cases with additional work solely to augment their fees, the balance struck by § 1988 goes awry.

The Court accepts these principles today. As in litigation for fee-paying clients, a certain amount of "billing judgment"

is appropriate, taking into account the fact that Congress did not intend fees in civil rights cases, unlike most private-law litigation, to depend on obtaining relief with substantial monetary value. Where plaintiffs prevail on some claims and lose on others, the Court is correct in holding that the extent of their success is an important factor for calculating fee awards. Any system for awarding attorney's fees that did not take account of the relationship between results and fees would fail to accomplish Congress' goal of checking insubstantial litigation.

At the same time, however, courts should recognize that reasonable counsel in a civil rights case, as in much litigation, must often advance a number of related legal claims in order to give plaintiffs the best possible chance of obtaining significant relief. As the Court admits, "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Ante*, at 435. And even where two claims apparently share no "common core of facts" or related legal concepts, see *ibid.*, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined. For instance, in taking a deposition of a state official, plaintiffs' counsel may find it necessary to cover a range of territory that includes both the successful and the unsuccessful claims. It is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time required to pursue both claims rather than just one is likely to be small.

Furthermore, on many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates. Most attorneys paid an hourly rate expect to be paid promptly and without regard to success or failure. Customary rates reflect those expectations. Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate. The difference, however, reflects the time-value of money and the

risk of nonrecovery usually borne by clients in cases where lawyers are paid an hourly rate. Courts applying § 1988 must also take account of the time-value of money and the fact that attorneys can never be 100% certain they will win even the best case.

Therefore, district courts should not end their fee inquiries when they have multiplied a customary hourly rate times the reasonable number of hours expended, and then checked the product against the results obtained. They should also consider both delays in payment and the prelitigation likelihood that the claims which did in fact prevail would prevail.[8] *Copeland* v. *Marshall, supra,* at 402–403, 641 F. 2d, at 892–893; *Northcross* v. *Board of Education of Memphis City Schools,* 611 F. 2d 624, 638 (CA6 1979); *Lindy Bros. Builders, Inc.* v. *American Radiator & Standard Sanitary Corp.,* 540 F. 2d 102, 117 (CA3 1976). These factors are potentially relevant in every case. Even if the results obtained do not justify awarding fees for all the hours spent on a particular case, no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand.

## II

Setting to one side theoretical issues about how district courts should approach attorney's fees questions under

---

[8] Thus, the Court's opinion should not be read to imply that "exceptional success" provides the only basis for awarding a fee higher than the reasonable rate times the reasonable number of hours. See *ante,* at 435. To the contrary, the Court expressly approves consideration of the full range of *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714 (CA5 1974), factors. See *infra,* at 450–451. If the rate used in calculating the fee does not already include some factor for risk or the time-value of money, it ought to be enhanced by some percentage figure. By the same token, attorneys need not obtain "excellent" results to merit a fully compensatory fee, see *ante,* at 435; merely prevailing to some significant extent entitles them to full compensation for the work reasonably required to obtain relief. See *infra,* at 452, and n. 9.

§ 1988, I fear the Court makes a serious error in vacating the judgment in this case and remanding for further proceedings. There is simply no reason for another round of litigation between these parties, and the lower courts are in no need of guidance from us.

### A

The Court admits that the District Court made a "commendable effort" to explain the fee award and that the award "may be consistent" with today's opinion. *Ante,* at 438. It professes to be "unable to affirm" solely because the District Court's finding that "[t]he extent of this relief clearly justifies the award of a reasonable attorney's fee," App. to Pet. for Cert. A–16, is not accompanied by a further finding as to "what is 'reasonable' in light of that level of success." *Ante,* at 438–439.

Even if the District Court had been silent on the reasonableness of the amount of its fee award, it would be difficult to imagine why this Court would presume, as it apparently does, that a federal judge had awarded an *unreasonable* fee without explaining how such a result was compelled. In any event, the District Court stated expressly:

> "The Court concludes that, in this case, the entire award made to plaintiffs constitutes a reasonable attorney's fee. No portion of it can be characterized as a penalty or damage award against the state of Missouri." App. to Pet. for Cert. A–11.

The District Court also addressed each of the factors mentioned in *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714 (CA5 1974), discussed by the Court *ante,* at 429–430, under the general rubric "Reasonableness of the Fee." App. to Pet. for Cert. A–11 — A–18. It explained why it was not enhancing respondents' fee to account for the uncertainty factor, *id.,* at A–15 — A–16, and it discounted one attorney's hours by 30% to yield "a reasonable claim of time," *id.,* at

A–13.   The District Court had this to say under the sub-heading "Amount Involved/Results Obtained":

> "The significance of this case cannot be measured in terms of dollars and cents.   It involves the constitutional and civil rights of the plaintiff class and resulted in a number of changes regarding their conditions and treatment at the state hospital.   Not only should plaintiffs be considered prevailing parties, they are parties who have obtained relief of significant import.   Plaintiffs' relief affects not only them, but also numerous other institutionalized patients similarly situated.   The extent of this relief clearly justifies the award of a reasonable attorney's fee."   *Id.*, at A–16.

It is clear from the context that the District Court regarded the fee it was awarding as reasonable compensation for the results obtained.   Simply changing the word "a" to "this," in the last sentence quoted, would provide the additional finding the Court demands.

## B

No more significant legal error requires today's judgment.   The Court notes that the District Court relied on *Brown* v. *Bathke*, 588 F. 2d 634 (CA8 1978), an opinion the "emphasis" of which the Court regards as misplaced.   See *ante*, at 438–439, n. 14.   What the Court finds suspicious in *Brown* is the implication that a district court must award attorney's fees for all work "reasonably calculated to advance a client's interest," *i. e.*, all nonfrivolous claims, whenever the client satisfies the "prevailing party" test.   See 588 F. 2d, at 637–638.   The District Court did not, however, refer to the language criticized by the Court.   Rather, it cited a footnote in *Brown* for the proposition that "mechanical division of claimed hours . . . ignores the interrelated nature of many prevailing and non-prevailing claims."   App. to Pet. for Cert. A–7, citing 588 F. 2d, at 637, n. 5.   The remainder of the *Brown* footnote

makes clear that the court was concerned with related legal theories, only one of which ultimately becomes the basis for relief. To that extent, *Brown* is perfectly consistent with today's opinion. See *ante*, at 434–436, and n. 11. The Court of Appeals for the Eighth Circuit, in its brief, unpublished memorandum affirming the District Court, did not cite *Brown* at all. App. to Pet. for Cert. A–1 — A–2.

Perhaps if the questionable language in *Brown* were being misapplied in other cases from the Eighth Circuit, or if courts in some other circuit were misinterpreting § 1988 in light of precedents with similar implications, today's result would have some instructive value. But such is not the case. The Court of Appeals for the Eighth Circuit has never applied *Brown* in the manner the Court fears. Rather, its published opinions following *Brown* have made clear that, although it is an abuse of discretion to deny fees entirely to any plaintiff who has crossed the "prevailing party" threshold, district courts should consider the degree of plaintiffs' success in setting a fee award. See, *e. g.*, *Williams* v. *Trans World Airlines, Inc.*, 660 F. 2d 1267, 1274 (1981); *United Handicapped Federation* v. *Andre*, 622 F. 2d 342 (1980) (rejecting claim for over $200,000 in fees and setting $10,000 limit on award because of limited success in case); *Oldham* v. *Ehrlich*, 617 F. 2d 163, 168, n. 9 (1980); *Cleverly* v. *Western Electric Co.*, 594 F. 2d 638, 642 (1979).

The law in other Circuits is substantially identical. Federal Courts of Appeals have adopted a two-stage analysis, whereby plaintiffs who obtain any significant relief are considered "prevailing parties," and District Courts are directed to take into consideration the overall degree of a plaintiff's success, and the extent to which work on claims on which no relief was obtained contributed to that success, in setting the exact amount of the award due. The mere fact that plaintiffs do not prevail on every claim does not preclude an award of fees for all work reasonably performed,[9] but it is rarely an

---

[9] Both the Senate and House Reports make clear Congress' conclusion that success on every claim is not necessary. See *ante*, at 430–431, and

abuse of discretion to refuse to award fees for work done on nonprevailing claims that are not closely related to the relief obtained. See, e. g., Syvock v. Milwaukee Boiler Mfg. Co., 665 F. 2d 149, 163–165 (CA7 1981); Jones v. Diamond, 636 F. 2d 1364, 1382 (CA5 1981) (en banc); Lamphere v. Brown University, 610 F. 2d 46, 47 (CA1 1979); EEOC v. Safeway Stores, Inc., 597 F. 2d 251 (CA10 1979); cf. Copeland v. Marshall, 205 U. S. App. D. C., at 401–402, and n. 18, 641 F. 2d, at 891–892, and n. 18. Many of the same courts, however, have also stressed Congress' clearly expressed intent that the apparent monetary value of the relief obtained should not be the measure of success in a civil rights case, and they have recognized that in many cases various claims are essentially part and parcel of a single attempt to establish and vindicate the plaintiffs' rights. See, e. g., Copeland v. Marshall, supra; Gurule v. Wilson, 635 F. 2d 782, 794 (CA10 1981) (as modified en banc); Nadeau v. Helgemoe, 581 F. 2d 275 (CA1 1978).

Evaluation of the interrelatedness of several claims within a single lawsuit, and of the legal work done on those claims, is

---

n. 4. In addition, in its discussion of awards before final judgment, the Senate Report states:

"In appropriate circumstances, counsel fees under [§ 1988] may be awarded pendente lite. See Bradley v. School Board of the City of Richmond, 416 U. S. 696 (1974). Such awards are especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." Senate Report 5 (emphasis added).

See also Mills v. Electric Auto-Lite Co., 396 U. S., at 392 (allowing fees pendente lite in suit which "has not yet produced, and may never produce, a monetary recovery," an issue still to be tried).

The House Report notes that "courts have also awarded counsel fees to a plaintiff who successfully concludes a class action suit even though that individual was not granted any relief." House Report 8 (citing Parham v. Southwestern Bell Telephone Co., 433 F. 2d 421 (CA8 1970), and Reed v. Arlington Hotel Co., 476 F. 2d 721 (CA8 1973)). Note that in Reed the Court of Appeals awarded "reasonable attorney's fees, including services for this appeal," although the appellant obtained no significant relief at all on a major issue, either before the trial court or on appeal. See id., at 726.

most appropriately a task for the district court that heard and decided the case, subject to appellate review for abuse of discretion. As the Court implicitly recognizes, the case before us manifests no clear abuse of discretion. Although plaintiffs obtained only part of the specific injunctive relief they requested, the District Court's opinion on the merits both confirmed the existence of the constitutional right to minimally adequate treatment they claimed, App. 173–179, and established strict standards for staffing, treatment plans, and environment, against which the future conduct of defendants and other state mental health authorities will be measured, *id.*, at 188–195. To a large extent, the District Court's opinion fixed plaintiffs' entitlement to improvements instituted by defendants during the course of litigation. See *id.*, at 192–193 (treatment plans), 190–191 (staff); compare Deposition of H. Bratkowski 12–13, 39, reprinted in Brief in Opposition 8, n. 10, 12, with App. 106–114, 120–121 (increase in staff during litigation). It is thus entirely understandable that the District Court considered respondents to have prevailed to an extent justifying fees for all hours reasonably spent, subject to one substantial reduction of over 300 hours for wasteful litigation practices, see *ante*, at 438, n. 13.

## C

To remain faithful to the legislative objectives of § 1988, appellate courts, including this Court, should hesitate to prolong litigation over attorney's fees after the merits of a case have been concluded. Congress enacted § 1988 solely to make certain that attorneys representing plaintiffs whose rights had been violated could expect to be paid, not to spawn litigation, however interesting, over which claims are "related" or what constitutes optimal documentation for a fees request. Paragraph-by-paragraph scrutiny of the explanations for specific exercises of the district courts' broad discretion under § 1988 serves no productive purpose, vindicates no

one's civil rights, and exacerbates the myriad problems of crowded appellate dockets.[10]

If a district court has articulated a fair explanation for its fee award in a given case, the court of appeals should not reverse or remand the judgment unless the award is so low as to provide clearly inadequate compensation to the attorneys on the case or so high as to constitute an unmistakable windfall. See, *e. g., Gurule* v. *Wilson, supra,* at 792; *Furtado* v. *Bishop,* 635 F. 2d 915, 923, n. 16 (CA1 1980). Any award that falls between those rough poles substantially accomplishes Congress' objectives.[11] More exacting review, for which there is no clear mandate in the statute or its legislative history, frustrates rather than advances the policies of § 1988.

In systemic terms, attorney's fee appeals take up lawyers' and judges' time that could more profitably be devoted to other cases, including the substantive civil rights claims that § 1988 was meant to facilitate. Regular appellate scrutiny of issues like those in this case also generates a steady stream of opinions, each requiring yet another to harmonize it with the one before or the one after. Ultimately, § 1988's straightforward command is replaced by a vast body of artificial, judge-made doctrine, with its own arcane procedures, which like a Frankenstein's monster meanders its well-intentioned way through the legal landscape leaving waste and confusion (not to mention circuit splits) in its wake. Within the confines of

---

[10] Cf. Note, Promoting the Vindication of Civil Rights Through the Attorney's Fees Awards Act, 80 Colum. L. Rev. 346, 352 (1980).

[11] Congress having delegated responsibility for setting a "reasonable" attorney's fee to the court that tried the case, reviewing courts, as a matter of good judicial policy, should not disturb the trial court's solution to the problem of balancing the many factors involved unless the end product falls outside of a rough "zone of reasonableness," or unless the explanation articulated is patently inadequate. Cf. *Permian Basin Area Rate Cases,* 390 U. S. 747, 767 (1968).

individual cases, from prevailing plaintiffs' point of view, appellate litigation of attorney's fee issues increases the delay, uncertainty, and expense of bringing a civil rights case, even after the plaintiffs have won all the relief they deserve. Defendants—who generally have deeper pockets than plaintiffs or their lawyers, and whose own lawyers may well be salaried and thus have lower opportunity costs than plaintiffs' counsel—have much to gain simply by dragging out litigation. The longer litigation proceeds, with no prospect of improved results, the more pressure plaintiffs and their attorneys may feel to compromise their claims or simply to give up.

This case itself provides a perfect example. Petitioners, who have little prospect of substantially reducing the amount of fees they will ultimately have to pay, have managed to delay paying respondents what they owe for over two years, after all other litigation between them had ended, with further delay to come. Respondents' attorneys can hardly be certain that they will ever be compensated for their efforts here in defending a judgment that five Justices find deficient only in minor respects. Apart from the result in this case, the prospect of protracted appellate litigation regarding attorney's fee awards to prevailing parties is likely to discourage litigation by victims of other civil rights violations in Missouri and elsewhere. The more obstacles that are placed in the path of parties who have won significant relief and then seek reasonable attorney's fees, the less likely lawyers will be to undertake the risk of representing civil rights plaintiffs seeking equivalent relief in other cases. It may well become difficult for civil rights plaintiffs with less-than-certain prospects for success to obtain attorneys. That would be an anomalous result for judicial construction of a statute enacted "to attract competent counsel in cases involving civil and constitutional rights," House Report 9; cf. *Copeland* v. *Marshall,* 205 U. S. App. D. C., at 400, 641 F. 2d, at 890 (fee awards intended to provide "an incentive to competent lawyers to undertake Title VII work").

## D

Few, if any, differences about the basic framework of attorney's fees law under § 1988 divide the Court today. Apart from matters of nuance and tone, largely tangential to the case at hand, I object to only two aspects of today's judgment.  First, I see no reason for us to have devoted our scarce time to hearing this case, and I fear that the sudden appearance of a new Supreme Court precedent in this area will unjustifiably provoke new litigation and prolong old litigation over attorney's fees.  More fundamentally, the principles that the Court and I share should have led us, once we had granted a writ of certiorari, to affirm the judgment below.  To that extent, I dissent.