Smith, M.,
dissenting:
I respectfully dissent.
While I largely agree with my colleagues’ description of the legal framework controlling our analysis, I feel that the majority’s reasoning is flawed in two respects. First, the majority relies heavily on the fact that “Dream Palace prevailed on just four of its original sixteen claims” to conclude that Dream Palace’s success was limited, thereby justifying a reduced fee award. Second, the majority fails to acknowledge that those four successful claims represented the most important elements of Dream Palace’s complaint, and that success on those claims represented a significant achievement in light of the litigation as a whole.
As the majority notes, the district court is granted broad discretion in calibrating compensable hours based upon a successful outcome. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, the district court must be guided by the Supreme Court’s instruction that “the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court’s rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.” Id. at 435, 103 S.Ct. 1933 (internal citation omitted). See also Morales v. City of San Rafael, 96 F.3d 359, 364-65 (9th Cir.1996) (rejecting an analysis of fees based solely on monetary results in favor of analysis that takes into account “the significant nonmonetary results” achieved for the plaintiff and the rest of society).
Reducing the fees sought based on “the sheer volume of losses as compared with wins” is flawed reasoning under Hensley. But in this case, the majority is not even consistent in its numerical approach, granting Dream Palace only 11 % of its requested fees even though Dream Palace prevailed on 25% of its claims.
Based largely on their numerical approach, both the district court and the majority concluded that Dream Palace achieved only limited success, a conclusion not supported by the record. Dream Palace brought this action to challenge an ordinance adopted by Maricopa County that purported to ban “specific sexual activity” including any “simulated” sexual acts; required exotic dancers to wear work identification cards at all times, even when in the process of removing their clothing on stage; required employees to provide their home addresses to the County, in such a way that they could be available to *346 the general public on request; and imposed several other operating restrictions, including stage height requirements and restrictions on hours of operation. Dream Palace succeeded in striking the ban on “specific sexual activity” and “simulated” sexual acts, and the requirement that dancers wear their identification cards. Dream Palace also successfully obtained a permanent injunction against the County’s distribution of its employees’ personal information. Dream Palace did not prevail on its challenges against the regulations concerning stage height and hours of operation.[1]
Viewing the substance of all the claims in the context of the litigation as a whole, it is evident that Dream Palace was substantially more successful than it was unsuccessful, and that it prevailed on the most important aspects of its suit. Had Dream Palace not succeeded in striking the ban on simulated sex acts, for example, it would have been unable to continue its business of exotic dancing. Had Dream Palace’s dancers been required to wear their identification cards at all times, the dancers’s performance would have been rendered ludicrous, not enticing, to customers. Had Dream Palace’s employees been forced to make their personal information available to anyone who might request it from the County, it is unlikely any of them would have continued their employment, given the high risk of molestation from stalkers or protestors. The aggregate success achieved by Dream Palace was not “limited in comparison to the scope of the litigation as a whole,” because victory in its successful claims was vital to the continuance of Dream Palace’s business, while the unsuccessful claims were the equivalent of legal flotsam. See Hensley, 461 U.S. at 440, 103 S.Ct. 1933.
Although Dream Palace’s success in defending its business may not please some, its suit represents a successful defense of First Amendment rights to expression and a protection of its employees’ privacy rights. A personal distaste for Dream Palace’s business is not an appropriate basis for determining the success of Dream Palace’s law suit, and the fees legitimately owed as a result of that success.
I agree with the panel’s ruling insofar as it remands to allow for an additional $13,905.40 in fees for work performed at the district court level on an ultimately successful claim. However, I feel the panel’s ruling does not go far enough. I would therefore conclude that the district court abused its discretion in finding that Dream Palace had “limited” success, which warranted a drastic reduction in the fees to which it was legitimately entitled. I would reverse and remand for a reassessment of attorney’s fees in keeping with the legal analysis outlined in this dissent.

. Dream Palace challenged multiple aspects of the ordinance's licensing requirement on the grounds that forcing its employees to provide their personal information to the County would expose them to danger of molestation at their home addresses. When it ultimately prevailed on the claim for an injunction against the County's release of that information, it conceded that its other claims, which would remove the requirement to provide that information at all, were moot. Therefore, although Dream Palace did not "succeed" on those claims, it did succeed in removing the harmful consequences that motivated the claims.