**MANILDRA MILLING CORPORATION,**
Plaintiff,

v.

**OGILVIE MILLS, INC., Defendant
and Counterclaimant,**

v.

**John Thomas HONAN, Counterclaim
Defendant.**

Civ. A. No. 86–2457–DES.

United States District Court,
D. Kansas.

May 12, 1993.

W. Stanley Walch, Mark Sableman, Anthony K. Conroy, Thompson & Mitchell, St. Louis, MO, Charles D. Horner, Dennis L. Davis, Hillix, Brewer, Hoffhaus, Whittaker & Horner, Kansas City, MO, Murray J. Belman, Thompson & Mitchell, William K. West, Jr., Wayne Jones, Cushman, Darby & Cushman, Washington, DC, Robert L. Baechtold, David F. Ryan, Fitzpatrick, Cella, Harper & Scinto, New York City, Bruce H. Weitzman, McDermott, Will & Emory, Chicago, IL, for plaintiff.

Robert D. Benham, McAnany, Van Cleave & Phillips, PA, Kansas City, KS, Eugene Sabol; Paul Grandinetti, Mark Lee Hogge, Fisher, Christen & Sabol, Washington, DC, Michelle M. Suter, R. Pete Smith, McDowell, Rice & Smith, Kansas City, KS, John D. Gould, Daniel W. McDonald, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on Manildra Milling Corporation's ("Manildra") attorneys' fees application (Doc. 1264) and several motions related to the fees application. Also pending include Ogilvie Mills, Inc.'s ("Ogilvie") motion to permit further response to Manildra's application for attorneys' fees and to permit Ogilvie to conduct limited discovery on the issues (Doc. 1293); Manildra's motion for leave to file reply regarding fee application (Doc. 1297), which is untimely; and Ogilvie's motion for leave to file reply brief in opposition to Manildra's application for attorney's fees, expenses, and expert witness fees (Doc. 1299). The court also has received several letters from both parties regarding the pending application for fees.

As an initial matter, the court will grant all of the motions (Docs. 1293, 1297 and 1299) with the exception that Ogilvie's request to conduct limited discovery on the issues will be denied. Ogilvie contends the information and documentation provided in support of Manildra's fee application is inadequate. The court finds that Manildra has provided sufficient documentation and there is no need for any discovery on the matter.

In an order entered June 15, 1992, the court awarded Manildra attorneys' fees under Section 1117(a) of the Lanham Act and 35 U.S.C. § 285. *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 797 F.Supp. 874 (D.Kan. 1992). In allowing Manildra to recover under these statutes, the court found that the jury had implicitly found that Ogilvie's conduct was intentional and malicious, and in bad faith. Further, the court found that this was an exceptional case warranting the award of attorneys' fees. *Id.* at 889. In addition, the court awarded Manildra reasonable expert witness fees. *Id.*

To summarize, Manildra seeks attorneys' fees for 14,135.9 attorney hours and 3,142.3 paralegal hours. The total for attorneys' fees and expenses, including those hours billed by the St. Louis, Missouri, and Washington, D.C., offices of the law firm of Thompson & Mitchell and the Washington, D.C., law firm of Cushman Darby & Cushman, is $4,383,588.30. Manildra seeks expert witness fees of $560,993.81. Thus, Manildra's overall request for fees and expenses totals $4,944,582.11.

## EXPERT WITNESS FEES

█ The court first will address the matter of the expert witness fees. In its June 15, 1992, order, the court made the following statement:

> The court further finds that Manildra is entitled to recover reasonable expert witness fees because the use of expert witnesses in this case was necessary. *Mathis v. Spears,* 857 F.2d 749, 759 (Fed.Cir.1988). 797 F.Supp. at 889.

The court, after much research, determines it must revisit the issue of expert witness fees based upon the authorities cited by the parties.

Ogilvie contends that the recent United States Supreme Court case of *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), prohibits recovery of expert witness fees as a part of the statutory award of attorney's fees. Manildra contends this court has inherent equitable power to make an award of expert witness fees upon a showing of bad faith and, in any event, this court awarded the fees as a separate item and not as an element of attorneys' fees.

In *West Virginia Univ. Hospitals, Inc. v. Casey,* the Court examined common law treatment of expert witness fees and treatment under statutes shifting attorney's fees. The Court noted that "[a]t least 34 statutes in 10 different titles of the U.S.Code explicitly shift attorney's fees *and* expert witness fees." *Id.* 499 U.S. at ——, 111 S.Ct. at 1142. The Court concluded that expert witness fees were not and had never been an element of attorney's fees. *Id.* 499 U.S. at ——, 111 S.Ct. at 1146. Thus, absent explicit contrary statutory authority, 28 U.S.C. § 1920 and 28 U.S.C. § 1821(b), limit the court's ability to award expert witness fees in excess of $40 per day. *Id.* 499 U.S. at ——, 111 S.Ct. at 1148. The courts may continue to have inherent equitable authority to·award expert witness fees in excess of the amount specified in 28 U.S.C. § 1821(b), but only in limited exceptional circumstances. *Alyeska Pipeline Service Co. v. Wilderness Society,*

421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

In the court's June 15, 1992, order awarding expert witness fees, this court, while not expressly awarding the fees as an element of attorneys' fees, followed the reasoning in *Mathis v. Spears.* In *Mathis v. Spears,* the Federal Circuit allowed an award of expert witness fees in excess of the then $30 per day specified in 28 U.S.C. § 1821. That court purported to allow the award based upon the inherent equitable power of the court, but stated that the award of attorneys' fees could include reasonable expert witness fees. 857 F.2d at 759. The court's reasoning followed from 35 U.S.C. § 285, which authorized an award of attorney's fees only in "exceptional" cases. *Id.* In *Mathis,* "exceptional" meant a case of vexatious and unwarranted litigation. *Id.*

■ Upon reconsideration, the court finds that *West Virginia Univ. Hospitals, Inc. v. Casey,* precludes the award of expert witness fees in this case in excess of $40 per day. This court's previous finding to the contrary linked the expert witness fee award to the statutory attorneys' fees award, which is impermissible. Further, the court has made no finding of bad faith on the part of Ogilvie in litigating this case to justify an exercise of the court's equitable power to award such fees, and declines to make such a finding. The court believes something more than a finding that this is an "exceptional" case for the purpose of statutory attorneys' fees is needed to invoke the court's inherent equitable authority to award expert witness fees. *Chambers v. NASCO, Inc.,* — U.S. —, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Therefore, the court will amend its previous order allowing an award of expert witness fees in excess of $40 per day to exclude such an award.

## LODESTAR AMOUNT OF ATTORNEYS' FEES

■ The first task for the court is to determine the lodestar amount of the fees from which to begin. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This, of course, is not the end of the inquiry and the amount of the fee is dependent upon the facts of each case. *Id.* at 429–30, 103 S.Ct. at 1937–38. The customary rate charged by an attorney is relevant, but not necessarily a conclusive factor in determining a reasonable hourly rate. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983).

■ Ogilvie contends that the hourly rates billed by Murray Belman ("Belman") and William West ("West") are too high for the relevant market. The court first must determine whether local attorneys' fees rates apply in this case. Absent unusual circumstances, "the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Id.* The court finds that unusual circumstances exist in this case sufficient to justify the rates billed by both Belman and West. This case involved complex patent and antitrust claims, which consumed 79 trial days and 26 days for jury deliberation. Both sides employed patent attorneys as well as patent experts, which were necessarily drawn from areas of the country other than the Midwest. William West, who practices in Washington, D.C., was Manildra's patent attorney and charged from $180 per hour in 1986 to $320 in 1992. While Ogilvie believes West should be limited to the rate charged by Manildra's St. Louis patent expert John Howell, the court finds that it was reasonable and necessary for Manildra to employ patent counsel outside the Midwest. This is based upon the expertise required to try this case and the limited number of available patent firms in the Midwest which could handle this litigation. Therefore, the court finds that Manildra should not be limited to recover "local" rates for its patent counsel and West's rates, while high, are reasonable in light of the circumstances of this case.

For much the same reasons, the court will allow the rates billed by Murray Belman and the Thompson & Mitchell firm. Again, the rates are higher than rates typically charged in the Kansas City area, but the court believes the complexity of managing this litigation warrants allowance of the higher rate. Further, the court does not believe the disparity between the local rates, which the

court considers in this case to be rates in Kansas City and St. Louis, and the rates billed is so great as to make the rates unreasonable.

 Ogilvie further contends that the time billed by Thompson & Mitchell contained numerous examples of unproductive or inefficiently spent time. Cushman Darby & Cushman reduced its bill by 15 percent for time not well-spent prior to submitting it and Ogilvie contends the court should reduce Thompson & Mitchell's bill by a comparable amount. Thompson & Mitchell, however, introduced some cost-saving measures, such as not billing for more than 12 hours per day during trial and not more than 8 hours at a time for meetings, although some meetings ran much longer. The court, after reviewing Manildra's application, cannot say that the number of hours submitted is excessive for this case or indicative of inefficiency. Therefore, the court finds that the lodestar figure for attorneys' fees in this case is the requested $4,383,588.30.

## REDUCTIONS

The court will make the following reductions from the lodestar figure of attorneys' fees and each will be discussed in turn:[1]

| | |
|---|---:|
| Amount paid to Manildra as sanctions | $ 4,812.00 |
| Amount Attributable to Mistrial Phase | $ 759,333.12 |
| Amount Attributable to Attorney Overhead | $ 5,226.54 |
| 25% Reduction Attributable to Henkel Preparation | $ 539,975.03 |
| Total Reductions | $ 1,309,346.69 |
| Total Award | $ 3,074,241.61 |

Ogilvie contends that in the pretrial phase of the litigation, Manildra received an award of sanctions totalling $980 against Ogilvie on August 31, 1988, and against Henkel for $3,832 on May 31, 1989. Ogilvie asserts that the services upon which these awards are based have been included in the fees application. Manildra did not respond to that argument and the court will reduce the total award by the amount requested by Ogilvie, $4,812.

 The next reduction is $759,333.12, the amount attributable to the mistrial phase of this litigation. After almost 20 trial days, at the end of March 1991, the court reluctantly determined on motion by Ogilvie that a mistrial must be granted. The impetus was at least three contacts between Manildra's patent expert, John Howell, and several jurors. Despite the court's admonitions not to discuss the case, several of the jurors ignored the court's warnings.

The court finds that Manildra should not recover its fees for this phase of the trial, because it was John Howell, Manildra's own expert, who was involved in the improper conduct. The mistrial was based, not just on one incident, but several instances of contact between jurors and Mr. Howell. Manildra must shoulder some share of the blame for the contacts. The court will not shift the cost of the mistrial to Ogilvie, which, to the court's knowledge, had no culpability in the unfortunate occurrence.[2] The court finds Manildra's arguments against this reduction unpersuasive.

 The next reduction is that amount attributable to attorney overhead, $5,226.54. The court is to determine whether an item is attorney overhead based upon the practice in the local community. *Ramos v. Lamm*, 713 F.2d at 559.

Presented for the court's consideration were the affidavits of Carol Bonebrake and

1. Manildra challenges Ogilvie's proposed reductions to the amount of the attorneys' fees, but does not contest Ogilvie's calculations regarding the amount attributable to certain items. Therefore, the court will accept as accurate Ogilvie's calculations regarding the amount attributable to the sanctions, mistrial phase, pretrial phase and

attorney overhead, the areas in which the court makes reductions.

2. The court denies Ogilvie's request to award it attorneys' fees for defending the mistrial. Each party should bear its own costs.

Murray Belman for Manildra, and Patrick McAnany for Ogilvie. Belman's affidavit simply states that Thompson & Mitchell typically bills clients for the type of expenses involved here, including postage, secretarial overtime and the cost of books and. articles. Since Murray Belman is with Thompson & Mitchell's Washington, D.C., office, the court assumes his statements refer to that office. Ms. Bonebrake's affidavit states that it is her Topeka firm's practice to charge clients for these expenses. Patrick McAnany's affidavit states that his Kansas City law firm does not normally bill clients for these items and neither do other representative Kansas City firms.

The court is not inclined to allow the questioned items as recoverable expenses. It .is clear that each of the parties could find ample support for its position, which does not help the court resolve the issue. The court finds that postage, secretarial overtime and books are the types of items that more properly belong to the category of attorney overhead. The court is simply not convinced that the cost of such items should be allowed as expenses. Therefore, Ogilvie's proposed reduction of $5,226.54 to the overall recoverable amount of fees will be allowed.

■ Ogilvie asserts that $2,169,938.64 of Manildra's requested attorneys' fees is attributable to the pretrial phase of the litigation. During this time, Henkel Corporation and Henkel of America, Inc. ("Henkel"), were third-party defendants in the case and some of Manildra's preparation was directed toward its claims against Henkel. Henkel was a prior owner of the patents at issue in this case. Manildra settled its claims against Henkel prior to trial. Ogilvie contends there should be a 50 percent reduction of fees in this phase to fairly allocate the time Manildra spent on claims directed against Henkel.

Manildra contends that Henkel, as a party joined by Ogilvie, did not add much preparation to the pretrial phase of the litigation. The court is unable to determine exactly how much time was spent by Manildra on Henkel preparation, but believes a 50 percent reduction is excessive. On the other hand, the court finds Manildra should not recover all the fees for that time period, knowing that a portion was not attributable to the claims against Ogilvie. In fairness, the court finds that a 25 percent reduction in attorneys' fees for the pretrial phase is warranted to account for time spent in investigating the .claims, doing discovery and settling. the claims against Henkel. Because some of Manildra's time spent on Henkel activities would be equally applicable to its claims against Ogilvie, the court declines to further reduce the award.

Given the previous deductions of attorney overhead, $5,226.54, and the amount paid to Manildra as sanctions, $4,812.00, the total remaining pretrial amount of requested fees is $2,159,900.10. A 25 percent reduction decreases this amount by $539,975.03. In summary, the total amount of reductions to Manildra's attorneys' fees application is $1,309346.69, leaving a total fee award of $3,074,241.61.

As a final matter, Ogilvie makes numerous other arguments regarding the amount and type of fees which should be reduced. The court has considered all of Ogilvie's arguments and has determined that the other requests for reductions must be denied. Only one of these arguments will be addressed.

■ Ogilvie contends that Manildra's attorneys' fees award must be reduced to account for the claims for which there is no statutory basis for attorneys' fees or on which Manildra was unsuccessful. Manildra did not prevail on its antitrust claims, but did recover on its patent, Lanham Act, intentional interference, and injurious falsehood claims.

The court will deny Ogilvie's requested reduction on two grounds. First, the claims all arose out of a common core of facts and the court previously stated in its June 15, 1992, order that costs could not be apportioned. As this court reasoned in its previous order:

all of Manildra's claims centered upon the same issues which had to be proven in order to establish violations of the Lanham Act. In order to recover under the Lanham Act, Manildra had to prove that Ogilvie had made false representations of fact

about its large-granule wheat starch and Manildra's large-granule wheat starch; Manildra had to establish by clear and convincing evidence that the patent claims-in-issue were invalid, or that the patents were unenforceable. Thus, the court finds Manildra's claims were so 'tightly bound' together, that the same work was necessary for all of Manildra's affirmative claims. Thus, the court concludes no apportionment of costs is warranted. 797 F.Supp. at 888.

For the same reason, the court finds that attorneys' fees cannot be apportioned.

Second, the court believes Manildra was quite successful in recovering on its claims, failing to prove only its claims for antitrust, patent misuse and inequitable conduct. The result obtained in a case is a factor which should be considered in determining the overall fee award. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. The Court stated that two questions must be addressed in making this determination.

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *Id.*

The most critical factor, according to the Court, is the degree of success.

The major claim on which Manildra failed to recover was the antitrust claim. On the other hand, it recovered on the unfair competition claim, which required presentation of basically the same evidence as the antitrust claim. The total recovery of $2.25 million in compensatory damages and $2.5 million in punitives, was, in the court's opinion, a very successful result. After considering all of the appropriate factors, the court finds Manildra's success on its claims supports the court's decision not to apportion. Reducing the recovery of attorneys' fees for those claims will be denied.

**IT IS BY THE COURT THEREFORE ORDERED** that Manildra is awarded a total of $3,074,241.61 in attorneys' fees.

**IT IS FURTHER ORDERED** that the court's order of June 15, 1992, *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 797 F.Supp. 874 (D.Kan.1992) is amended to exclude an award of expert witness fees beyond the statutory allowable $40 per day.

**IT IS FURTHER ORDERED** that the court takes the following action on the remaining pending motions:

Motion to Permit Further Response to Manildra's Application for Attorneys' Fees and to Permit Ogilvie to Conduct Limited Discovery on the Issues (Doc. 1293): **GRANTED** as to the response, **DENIED** as to discovery;

Manildra's Motion for Leave to File Reply Regarding Fee Application (Doc. 1297): **GRANTED;** and

Ogilvie's Motion for Leave to File Reply Brief in Opposition to Manildra's Application for Attorney's Fees, Expenses, and Expert Witness Fees (Doc. 1299): **GRANTED.**