**In re REMOTE OPERATING SYSTEMS, INC., Debtor.**

**Bankruptcy No. 98–38624–SAF–7.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 13, 1999.

---

Scott Seidel, Passman & Jones, Dallas, TX, for Chapter 7 Trustee, Movant.

Nancy Resnick, Office of the U.S. Trustee, Dallas, TX, for U.S. Trustee, Respondent.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Scott M. Seidel, the Chapter 7 trustee of the bankruptcy estate of Remote Operating Systems, Inc., has applied for compensation of his auctioneer, Brunson & Associates, Inc., and for the reimbursement of the auctioneer's expenses. The trustee bases the application, in part, on recently issued guidelines from the Office of the United States Trustee. Those guidelines reflect changes from the practices previously approved by this court. Consequently, the court conducted an evidentiary hearing on the application on June 3, 1999.

The award of compensation as an administrative expense in a bankruptcy case constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

The court may award the auctioneer as a professional person reasonable compensation for actual, necessary services rendered to the bankruptcy estate and may reimburse the auctioneer for actual, necessary expenses. 11 U.S.C. § 330(a). The court determines the reasonableness of compensation by analyzing compensation practices for professional persons for performing comparable services other than in a bankruptcy case. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985). For attorneys and accountants, the court applies the lodestar analysis of reasonable number of hours spent times a reasonable hourly rate to determine reasonable compensation. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). For auctioneers, the court must establish parameters that replicate the practice for comparable services other than in a bankruptcy case.

For many years the court awarded auctioneers compensation based on the following parameters: 10% of the first $5,000 in gross proceeds of sale and 5% of the remaining balance. The court also reimbursed the auctioneer's reasonable expenses. Having found that creditors outside of bankruptcy proceedings expect that the cost of liquidating collateral may run as high as one-third of the collateral's value, the court would not award a combination of compensation and expenses exceeding one-third of the auction proceeds without a showing of extraordinary circumstances.

But times and practices change. Market conditions change. In response to the changes, the Office of the United States Trustee issued guidelines in September 1998 that recognized that auctioneers often charged a buyers' premium in non-bankruptcy auctions. The United States Trustee directed that if the auctioneer intended to charge a buyers' premium in a bankruptcy auction and to retain the premium rather than turning it over to the bankruptcy trustee, the trustee's application to employ the auctioneer had to seek specific authorization from the court. In addition, the guidelines established that the United

States Trustee would not contest compensation from the bankruptcy estate for sales of personal property of 10% of the first $50,000, 5% of amounts between $50,001 and $100,000, and 3% of all amounts in excess of $100,000. The auctioneer could also seek reimbursement of expenses.

Invoking these guidelines, on January 22, 1999, Seidel applied to the court for authorization under 11 U.S.C. § 327 to employ Brunson & Associates, Inc., as his auctioneer. By order entered February 16, 1999, the court authorized Brunson's employment by the trustee but deferred all compensation issues.

By order entered February 17, 1999, the court authorized the trustee to sell the property of the bankruptcy estate. Brunson conducted the sale on February 20, 1999. The sale brought a total of $5,936.50. Brunson collected a 10% premium of $593.65 from the buyers. Brunson requests compensation from the estate of $593.65, which is 10% of the sales amount, and reimbursement of expenses of $458.65.

S.B. Lajoie, Brunson's president, testified that Brunson charges a 10% buyers' premium in non-bankruptcy auctions. He further testified that the auctioneers in Dallas and throughout the country typically collect a buyers' premium, and that the collection of a buyers' premium does not chill the auction process. In *In re Alexa Computers, Inc.,* case no. 398–36915–SAF–7, Michael Rosen, chief executive officer of Rosen Systems, Inc., testified similarly.

Lajoie also testified that some sellers such as lending institutions and some large corporations also compensate the auctioneer a percentage of the sales amount and reimburse expenses. Rosen testified in the *Alexa Computers* case that sellers usually paid the expenses. Both Lajoie and Rosen agreed that the United States Trustee's guidelines did not adequately address compensation for larger auctions. For smaller auctions by non-lending institutions, the guidelines may result in an auctioneer's bankruptcy recovery exceeding similar non-bankruptcy auctions. For financial institutions and for very small operations, Brunson might actually realize a larger recovery.

For larger auctions, both Lajoie and Rosen testified that non-bankruptcy auctions would generate commissions greater than the 3 to 5% provided in the United States Trustees guidelines. In larger auctions, the auctioneer may recover a larger premium but would negotiate with the seller regarding a discount or other concession on expenses or other terms of the sale.

Until receiving guidance from the court on applications to compensate auctioneers, in *Alexa Computers* Rosen voluntarily included the amount of the buyers' premium in the amount turned over to the trustee and calculated the auctioneer's 10% commission from the total. In non-bankruptcy auctions, the auctioneers would retain the buyers' premium. So the court found that the practice used in *Alexa Computers* constituted reasonable compensation.

Both Lajoie and Rosen agree that the seller typically reimburses expenses. Both also agree that a total recovery by the auctioneer in excess of one-third of the auction sales amount would be an extraordinary situation requiring justification by the auctioneer.

Lajoie suggested that in addition to the buyers' premium, the auctioneers should recover 10% from the bankruptcy estate to cover expenses. He suggested that a flat rate would not penalize the auctioneer for large auctions and would permit the recovery of expenses. While 11 U.S.C. § 330(a)(1)(B) mandates a court finding of actual, necessary expenses, this suggestion may merit further analysis.

■ To replicate non-bankruptcy practice for non-financial institution sales of less than $50,000, the court finds that if the auctioneer collects a buyers' premium of 10%, the auctioneer may only recover his actual, necessary expenses from the

bankruptcy estate. This reflects the non-bankruptcy practice of collecting a 10% fee from the buyers while recovering expenses from the seller. Because the seller in a bankruptcy case is the trustee, and not a financial institution, the court does not permit the recovery of an additional percentage from the bankruptcy estate, as that would appear to result in a recovery greater than would be obtained in a non-bankruptcy sale for a comparable entity. While the court recognizes that some sellers under some circumstances may pay the auctioneer a greater compensation, this accords with prevailing practices for auctions similar to the one in this case.

This also recognizes that based on non-bankruptcy practice, the buyers' premium does not become the seller's property. Accordingly, under 11 U.S.C. § 541, the buyers' premium would not be considered property of the bankruptcy estate.

But the court also finds that an auctioneer may voluntarily include the amount collected as the buyers' premium with the sale's proceeds. Thus, from the testimony in this case and in the *Alexa Computers* case, the court finds that reasonable compensation and reimbursement of expenses for auctioneers for sales of $50,000 or less may be awarded in the following alternative manners:

■ 1. The auctioneer may collect and retain a buyers' premium directly from the buyers and request reimbursement of actual, necessary expenses from the bankruptcy estate. The court may act on an application for reimbursement of expenses without a hearing unless an objection has been filed or the court, on its own, sets a hearing.

■ 2. The auctioneer may collect a buyers' premium but include the premium collected in the total amount turned over to the bankruptcy trustee. If the auctioneer follows that practice, the auctioneer may request compensation from the estate of 10% of the proceeds of the sale including the buyers' premium and request reim-

bursement of actual, necessary expenses from the estate. The commission of 10% would be calculated on the total realized from the auction and paid, with court approval, from the estate. Absent an objection, the court may act on the application without a hearing. Should the commission and reimbursement of expenses exceed one-third of the total recovered, the auctioneer would have to establish extraordinary circumstances by written explanation or at a hearing.

■ Under either alternative, the trustee's application to employ the auctioneer must disclose if the auctioneer will collect a buyer's premium and if·so, the terms of the premium. The application must also state the compensation alternative the auctioneer requests, and, if feasible, the probable range of anticipated auction proceeds, including any buyer's premium.

■ As with any guidelines, an applicant may request compensation and reimbursement of expenses on a different basis should the circumstances warrant. The applicant would have the burden of establishing the reasonableness of compensation. *See In re Beverly Manufacturing Corp.*, 841 F.2d 365, 371 (11th Cir.1988).

The court limits these alternatives to sales of personal property of $50,000, or less. The court recognizes that the United States Trustee's guidelines may not replicate non-bankruptcy practices for sales over $50,000. But the court also recognizes that for larger sales, the auctioneer would negotiate terms with the seller. The court expects that the auctioneers and trustees will engage in similar negotiations. The court defers consideration of compensation for larger sales until requested in specific cases.

In the meanwhile, the United States Trustee should again evaluate its guidelines. In doing so, the United States Trustee should analyze the suggestion of a flat rate recovery from a bankruptcy estate to cover fees and expenses.

With regard to the alternatives enunciated in this order, the court may revisit them if warranted by evidence on applications in other cases.

 In this case, the second alternative would better compensate the auctioneer than the first approach. Had Brunson & Associates included the buyers' premium in the total proceeds, the total would have been $6,530.15. A commission calculated at 10% would yield $653.02. As Brunson holds $593.65, the court awards an additional $59.37.

The court also finds that the actual, necessary expenses totaled $458.65.

Based on the foregoing,

**IT IS ORDERED** that Brunson & Associates, Inc., is awarded compensation of $653.02, of which $593.65 has already been paid, and reimbursement of expenses of $458.65.