CSC CONSULTING, INC, Plaintiff,

v.

THINKCHAIN INC., Thinkchain Holdings, LLC, Fondelec Group, Inc., & Gaston Acosta–Rua, Defendants.

No. 00 Civ. 7904(LLS).

United States District Court,
S.D. New York.

March 18, 2003.

Piper Rudnick LLP, Baltimore, MD (Arthur F. Fergenson, Cheryl Zak Lardieri, of counsel), for plaintiff.

Patrick J. Bliss, White Plains, NY, for Thinkchain, Inc., Thinkchain Holdings, defendants.

John A. Coleman, Armonk, NY, for Fondelec Group, Inc., defendant.

## OPINION and ORDER

STANTON, District Judge.

## GRANTING, IN PART, PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

The jury found in favor of plaintiff, and awarded it $201,082 as damages, on its claim that Thinkchain made a fraudulent transfer of all its assets under New York Debtor and Creditor Law § 276. Section 276-a entitles plaintiff to a reasonable attorney's fee for successfully prosecuting that claim.

Plaintiff's application establishes, through a fair process of calculation, that its attorney's fees for prosecuting both its claim for fraudulent transfer and its claim for piercing the corporate veil come to $412,646. Plaintiff claims that amount, arguing that the services on the transfer and the piercing claims are inseparable, and that the proof on each supported the other. It asserts: "In sum, fraudulent conveyance and piercing were conjoined twins in the context of the proof in this case." (Feb. 28, 2003 Reply, p. 4) Plaintiff also seeks $8,116 for preparation of its motion.

While plaintiff was highly successful in its trial result (except as against Mr. Acosta–Rua individually) including its fraudulent transfer claim, that is the only claim with a statutory basis for the recovery of fees. Much work, and a large part of the trial, was devoted to piercing the corporate veil so that FondElec would be liable for Thinkchain's wrongdoing. The proof on specific claims included the fraudulent transfer but, to a much greater extent, concerned Thinkchain's breach of contract and wrongful dishonor of a check, and FondElec's tortious interference with Thinkchain's contract. Damages awarded on the breach of contract claim were over 15 times the award on the fraudulent transfer claim. Damages awarded on the claim for wrongful dishonor of a check were over 2.5 times, and damages awarded for tortious interference were over 12 times the award on the fraudulent transfer claim.

An approach should be taken which discriminates between the large effort necessary to prove piercing (which was frankly recognized as essential to obtaining any realistic recovery) and the lesser issue of fraudulent transfer, which is the only one on which attorney's fees are available. There seems to be no way to segregate the services on each claim mechanically, arithmetically or concretely. A page-by-page examination of the time records shows that only occasionally do they particularize the issue concerning which work recorded was done. That is not surprising; it is inherent in the way most professional work is performed and recorded during discovery, trial preparation, and trial. However, it renders that fundamental source useless as a method of allocating the time spent between the two claims. Neither side has suggested how to make such an allocation.

The plaintiff says the services are indivisible between the two claims. Defendants oppose any allowance of attorney's fees, particularly against FondElec.

Accordingly, the division must rest on estimation, based on the quantum of testimonial and documentary evidence presented, the trial time consumed and an experienced appraisal of the underlying time and effort required in connection with the proof with respect to each claim.

The applicable evidence at trial can be roughly divided into three categories:

1. Evidence bearing directly on an essential element of the fraudulent transfer claim, such that one could not effectively try the fraudulent transfer claim without it. For example, it would be a complete defense if the transfer were made in satisfaction of a legitimate prior loan, so such essential evidence includes the expert testimony that what purported to be such loans were actually equity investments;

2. Evidence bearing on both the piercing and fraudulent transfer claims, but so useful in proving the transfer claim that it would be worth the effort of pursuing that evidence even if there were no veil-piercing claim. Proof falling in this category included, for example, some evidence of the relationship between the parties to the transfer (although not in the full scope or detail necessary to establish piercing) and the processes overlooked in connection with the documents concerning the purported loans;

3. Evidence bearing on both the piercing and transfer claims, which would not be worth pursuing in the prosecution of the fraudulent transfer claim, if there were no issue of veil-piercing in the case. This included evidence of inaccuracies in unrelated documents, defects in corporate notices and resolutions, and a large component of the detailed evidence of correspondence, daily transactions, etc., cumulatively supporting the conclusion of corporate dominance and control, and establishing the other elements required for piercing.

Attorney's fees under N.Y. Debtor and Creditor Law § 276–a should be awarded with respect to the first two categories only.

This cannot be determined by counting pages of trial transcript, or the number of exhibits in evidence. That leads one in the wrong direction, away from the fair appraisal of the degree of attorney preparation, skill, enterprise and work involved in the obtaining, preparation and employment of the proof, and the related factors upon which a proper fee award should rest.

As stated by Mr. Justice Brennan, concurring and dissenting with Justices Marshall, Blackmun and Stevens in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1950, 76 L.Ed.2d 40 (1983):

> Evaluation of the interrelatedness of several claims within a single lawsuit, and of the legal work done on those claims, is most appropriately a task for the district court that heard and decided the case, subject to appellate review for abuse of discretion.

District courts naturally prefer to make decisions which can be demonstrated to be correct by reference to particular evidence and processes of reasoning. When the "solution to the problem of balancing the many factors involved" (*ibid,* fn. 11) lacks such support, the court must find a "rough zone of reasonableness" (*ibid.*) into which the particular dollar figure falls. The first type of decision is more satisfactory, but occasionally the second is required. This is such a case.

192

Based upon my observations while presiding over the 17–day trial, 30 years of litigation experience as a lawyer and 17 on the bench, which include veil-piercing and fraudulent transfer cases, my appraisal is that of the total work performed with respect to the fraudulent transfer and veil-piercing claims in this case, including the spoliation issue, 35% fell within the first two categories above.

Applying that ratio to the sum of $412,646 yields $144,426 on the fraudulent transfer claim. While that amount is substantial (71.82%) when compared to the fraudulent transfer damages, it is small when compared to plaintiff's total recovery (4.54%).

To that figure there will be added $8,116 for services in connection with the fee application, resulting in a total of $152,542 to be paid jointly and severally by both defendants.

So ordered.