PLAGER, Circuit Judge,
dissenting.
The majority opinion focuses on two issues in this appeal[1] — -first, whether the *1235 trial court correctly determined the amount of attorney fees to which the plaintiffs are entitled; and second, a subset of that question, was the trial court correct in using as the relevant market for pricing attorney services the District of Columbia, rather than Texas. On the first issue, I agree with the majority that the trial judge erred in his final calculation of the amount of reimbursable attorney fees; where we differ is on what to do about it. On the second issue, I disagree with the majority’s overriding of the trial court’s factual determination that the relevant market for these particular attorney services is the home base of these particular attorneys.
With regard to the first issue — whether the trial court correctly determined the amount of reimbursable attorney fees under this fee-shifting statute — the majority acknowledges the generally fine job the trial court did in sorting through the evidence, with which I agree; the majority recites the applicable law; and the majority concludes that the trial court did err in its final figure. To that point we are in agreement. How that error should be corrected, however, is a matter of dispute between us.
Simply stated, the trial court correctly invoked the controlling lodestar formula; made the required detailed findings regarding the number of hours reasonably expended by the plaintiffs’ attorneys; multiplied that by the reasonable hourly rate using the “Updated Laffey Matrix” applicable to District of Columbia attorney services; and came up with a lodestar figure.
The record is undisputed that the trial court determined that the hours claimed (and awarded with small adjustment) were reasonable; the court specifically so found. The trial court properly multiplied those hours by the reasonable rates it had determined, and then arrived at what on the record is a reasonable and correct lodestar award.
Had the trial court stopped there, it would have been fine. Inexplicably, at least to me, the trial court then reduced the lodestar award by 50%. Other than noting that the fee seemed to be “extremely high” in contrast to the overall award on the merits, the only substantive basis for such a reduction the trial court mentioned was the existence of a fee agreement between the plaintiffs and their attorneys that included a contingent fee option. Otherwise there is nothing to suggest or support the reduction in the award.
I agree with my colleagues that “the fee agreement between appellants and their counsel in this case is not a proper basis for reducing the lodestar.... ” Maj. op. at 1231-32. The fee agreement expressly stated that the attorneys’ fee could be based on either regular billing hours or a contingent fee, whichever was greater. We need not spend undue time reciting the obscure law on contingent fee considerations to simply acknowledge that under such an agreement, the possibility of a contingent fee does not serve as the benchmark for the fee award.
The Supreme Court in Perdue stated that any departure from the lodestar by the trial court must evidence “a method [for a different calculation] that is reasonable, objective, and capable of being reviewed on appeal....” Perdue v. Kenny A. ex rel. Winn, — U.S. -, -, 130 S.Ct. 1662, 1674, 176 L.Ed.2d 494 (2010). Once the contingent fee is removed from the calculation, there is nothing in the trial court’s opinion that meets any of those *1236 criteria. More importantly, on the record in this case I see no reasoned basis for departing from the lodestar. The attorneys won virtually everything they set out to win. This is the kind of case that fee shifting is intended to encourage — many plaintiffs with small individual claims but a common transgression by the Government. Congress has made clear that the award is to be of the “reasonable attorney ... fees, actually incurred....” 42 U.S.C. § 4654(c). That the award is substantial when compared to the total recovery is neither surprising nor unusual. See Reply Br. 11. Once the hours expended and fees earned were found reasonable, the trial court’s work in this phase of the litigation was concluded. By summarily halving the award, the trial court misunderstood its job under the statute, and by acting contrary to law exceeded its authority.
The Supreme Court has wisely said, “[a] request for attorney’s fees should not result in a second major litigation. Nor should it lead to years of protracted appellate review.” Perdue at 1684 (Kennedy, J., dissenting) (citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). I would simply reverse and reinstate the lodestar award, and not put the trial court to the task of further hearings and this court to the inevitable further appeals.
Regrettably, the majority proposes instead to remand the issue to the trial court to again undertake a calculation of the lodestar, this time however to consider the “amount involved and results obtained” as part of the initial lodestar calculation, rather than as an afterthought. But that won’t work either. As the majority itself acknowledges, the Supreme Court has made it abundantly clear that the lodestar controls absent “rare and exceptional circumstances.” Maj. op. at 1224. There is nothing rare or exceptional about these circumstances, beyond the trial court’s unfortunate abuse of its discretion in arbitrarily reducing the lodestar award which it had determined to be reasonable. On remand, the same lodestar figure, absent the halving, is the only outcome the record could support. To remand is just to make work for the trial court, which it does not need, and to provide an opportunity for another appeal here, likely of little if any value to any one. Accordingly, from the decision to remand for no good purpose I respectfully dissent.
With regard to the second issue — was the trial court correct in using as the relevant market for pricing these attorney services the District of Columbia, rather than Texas — I agree with my colleagues that “in determining the amount of reasonable attorneys’ fees to award under federal fee-shifting statutes, the district court is afforded considerable discretion.” Maj. op. at 1228. We defer to the trial court in so far as possible, and particularly in its fact finding, given that the trial court is closest to the parties and to the ebb and flow of the litigation, and given the legal standard on appeal: we must find an abuse of discretion to overturn the trial court’s determinations.
At the trial, the plaintiffs explained fully about their search for the best counsel for this type of specialized takings litigation. There is no showing that their choice of this particular counsel, located in Washington D.C., was motivated by anything other than a desire to get the best qualified representation. Under the circumstances, particularly when much of the legal work was office work done at the attorneys’ home offices, the simple economic notion of opportunity-cost would justify using the attorneys’ hometown rates. The trial court made that determination, and found such rates to be reasonable under the fee-shifting statute. When parties seek jus *1237 tice in the courts, especially when the Government is the defendant, neither we nor the Government should be in a position to challenge a plaintiffs reasoned choice of private counsel.
In holding to the contrary, the majority fails to grant the trial court the discretion in fact-finding that the law provides, and, from the rarified heights of an appellate court and a distance of a thousand miles, denies these plaintiffs the right to seek out and employ the best lawyers they could find to handle a complex class-action litigation that has now been in dispute for over ten years. The majority explains this by saying that this is not fact-finding but a misunderstanding of law, and adding, “[t]he plaintiffs of course have the absolute right to choose their own counsel; what they do not have is the right to recover Washington, D.C. rates where competent local counsel are available.” Maj. op. at 1234, n. 12. One might have thought that the trial judge was in the best position to ascertain whether there were local lawyers available with equivalent competencies to the plaintiffs’ chosen lawyers in this particular field of litigation; ruling that all lawyers are fungible as a matter of law is for me carrying egalitarian-ism a bit too far.
Contrary to my colleagues’ position, I would affirm the trial court’s decision that the basis for determining a reasonable fee for the services rendered should be the fees charged in the hometown of the plaintiffs’ chosen attorneys (Washington, D.C.) and not what some lawyers might charge for services rendered at the forum (in this case Texas). From the majority’s contrary holding, I must respectfully dissent.

. The preliminary question addressed by the majority — whose law to apply to the case— seems indisputable; I concur in their conclusion.