*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-0429**

State of Minnesota,
by its Commissioner of Transportation, petitioner,
Appellant,

vs.

Debra Jean Johnson,
a/k/a Debra J. Johnson; et al.,
Respondents,

Great Lakes Gas Transmission Company, et al.,
Respondents Below.

**Filed September 22, 2014**
**Affirmed**
**Reilly, Judge**

Beltrami County District Court
File No. 04-CV-10-151

Lori Swanson, Attorney General, Stephen D. Melchionne, Natasha Karn, Assistant Attorneys General, St. Paul, Minnesota (for appellant)

Daniel J. Biersdorf, Ryan Simatic, Biersdorf & Associates, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

**REILLY**, Judge

Appellant challenges the district court's award of attorney fees to respondents arising out of an eminent-domain action, arguing that the district court's award was clearly erroneous and not supported by the evidence in the record. Because the district court did not abuse its discretion by applying the factors enunciated by the supreme court in *State v. Paulson*, 290 Minn. 371, 188 N.W.2d 424 (1971), to adjust a lodestar-based attorney fee upwards, and because the district court did not clearly err in determining a reasonable award of attorney fees, we affirm.

## FACTS

Respondents Diane Davis, Jay Davis, and Northwoods Investments of Bemidji, LLC, are the owners of real property located in Bemidji. The property is low-density commercial property composed of two tracts of 2.31 acres and 16.46 acres for a total of 18.77 acres, located on the east side of Highway 197 on the north-east quadrant of the intersection of Highway 197/71 and Highway 2. Prior to condemnation, respondents' property had direct access from Highway 197 on its west side. Diane Davis and Jay Davis operate the Royal Oaks RV Park campground on the largest portion of the property. The 2.31-acre portion of the property fronting Highway 197 is known as Northwoods Investment of Bemidji, LLC, and is held by Diane Davis and Jay Davis as an investment property to take advantage of the road frontage and the Highway 2 exit ramp location.

The Minnesota Department of Transportation (MnDOT) determined that the state needed to exercise its eminent-domain powers to take certain lands in Beltrami County for trunk highway purposes, including portions of respondents' property. In August 2009, the state presented a certified offer to respondents of $48,300, which was declined. The last written offer by MnDOT to respondents was $112,600.

In December 2009, the state filed a condemnation petition under Minn. Stat. § 117.042 (2012) to obtain fee simple absolute title to the lands, including right-of-access to the highway and temporary easements. With respect to respondents' land in particular, the taking consisted of 0.59 acres of fee simple interest, right-of-access to the highway along the east edge of the new right-of-way, and a ten-inch strip of temporary easement along the new right-of-way. As a result of the taking, respondents' property no longer had direct access from the highway.

The condemnation matter came before the district court in April 2010. Respondents objected to the granting of the petition. The district court determined that the proposed taking "is for a public use or public purpose, and is necessary, and as such is provided for and authorized by law," and granted the state title and possession of the taking through the eminent-domain process. Following issuance of the condemnation order, the parties began settlement discussions on respondents' damages claim.

In September 2010, respondents retained counsel to represent them in their claim against the state. The representation agreement between respondents and their attorney provided that counsel would be entitled to a contingency-fee award equal to one-third of the difference between the last written offer by the state and the final settlement,

including interest. Respondents' attorney engaged in protracted settlement negotiations on their behalf and ultimately secured a settlement in the amount of $425,000 to fully and finally settle all claims in the action, exclusive of claims arising under Minn. Stat. § 117.031 (2012) for statutory attorney fees, costs, and expenses. The stipulated settlement agreement was approved by the state in March 2012.

In June 2012, respondents moved for attorney fees, litigation expenses, and interest under Minnesota Statute section 117.031. Respondents sought a contingency fee of $113,531.92, representing one-third of the difference between the last written offer of $112,600 and the settlement of $453,195.75, including the $425,000 award and $28,195.74 in interest. Respondents submitted affidavits from their counsel including the representation agreement, a summary of the hours expended by the firm, and an affidavit of attorney fees and costs. The state opposed the motion, and the parties appeared before the district court in October 2012 on respondents' motion. The district court issued its order on January 8, 2013, granting respondents' motion for an award of attorney fees as follows: $113,531.92 for attorney fees, $8,000 in appraisal expenses, and $769.89 in costs, for a total award of $122,301.81. The state appeals.

### D E C I S I O N

We review an award of attorney fees for an abuse of discretion. *Cnty. of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013). A district court's factual findings underlying an award of attorney fees will not be set aside unless clearly erroneous. *Id*. The reasonable value of an attorney's work is a question of fact and the district court's

4

findings will be upheld unless they are clearly erroneous. *Cnty. of Scott v. Johnston*, 841 N.W.2d 357, 361 (Minn. App. 2013).

**I.**

The first question presented is whether the district court used the proper method in awarding attorney fees under Minn. Stat. § 117.031(a). This section provides that a property-owner is entitled to an award of "reasonable attorney fees, litigation expenses, appraisal fees, other experts fees, and other related costs" if the final judgment or damages award in an eminent-domain proceeding "is more than 40 percent greater than the last written offer of compensation made by the condemning authority prior to the filing of the petition[.]" Minn. Stat. § 117.031. The district court found that MnDOT's original quick-take offer for the property was $48,300 and MnDOT's last written offer was $112,600. Because the stipulated damages award was $425,000, the district court correctly determined that the award exceeded the last written offer by more than 40% and respondents were entitled to reasonable statutory attorney fees.

On appeal, the state challenges the district court's method of determining the reasonableness of the attorney-fee award. The Minnesota Supreme Court's analysis in *Cameron* is instructive. 839 N.W.2d at 700. The *Cameron* decision directs that "the lodestar approach governs the determination of the reasonableness of an award of attorney fees under Minn. Stat. § 117.031(a)." *Id.* at 711. The lodestar method requires a district court to determine the number of hours reasonably expended on the case and then multiply that number by a reasonable hourly rate. *Id.* However, "[t]he product of reasonable hours [times] a reasonable rate does not end the inquiry." *Id.* The district

5

court must consider "all relevant circumstances when evaluating the reasonableness of the hours expended by attorneys and their hourly rates." *Id*. Specific factual considerations, known as the *Paulson* factors, include:

> the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client.

*Cameron*, 839 N.W.2d at 711 (quoting 290 Minn. at 373, 188 N.W.2d at 426).

The state argues that the district court failed to properly apply the lodestar method and instead impermissibly used a contingency rate to determine the attorney-fee award. Contrary to the state's assertion, however, the district court addressed both the lodestar method and the *Paulson* factors in its analysis. The district court determined that the award sought by respondents was reasonable "by computing the reasonable hourly rate times a reasonable number of hours under lodestar and adjusting upward for various *Paulson* factors." Although the state is correct that the district court's attorney-fee award was not based solely on the lodestar method, Minnesota courts have long recognized that other considerations, including the results obtained by the attorney for the prevailing party may lead the district court to adjust the fee upward or downward. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 541-42 (Minn. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983)). This is consistent with the district court's approach here. The district court did not abuse its discretion in

6

considering the *Paulson* factors in its award of attorney fees and using those factors to adjust the attorney-fee award upward.

## II.

Next, we turn to the issue of whether the district court clearly erred in determining the reasonable amount of attorney fees. Minnesota caselaw is clear that a determination regarding the reasonable value of legal services is a "question of fact to be determined by the evidence submitted, the facts disclosed by the record of the proceedings, and the court's own knowledge of the case." *Paulson*, 290 Minn. at 373, 188 N.W.2d at 426.

The district court began its inquiry by performing a lodestar analysis. The district court reviewed the hourly breakdown for the work performed and concluded that the hourly rates for staff and attorney work were reasonable. The district court then reviewed the *Paulson* factors and made several specific factual findings. In determining a reasonable amount of attorney fees, the district court found that respondents' attorney had "extensive experience and ability," that the "nature and difficulty of the responsibility assumed . . . was not insubstantial," and that the result obtained was "considerably large." The district court also recognized that respondents entered into a contingency-fee arrangement with their counsel, which is "standard within the eminent domain bar." Based upon the *Paulson* factors, the district court awarded respondent one-third of the difference between the last written offer and the settlement.[1]

---

[1] The state argued that it offered respondents, who at that time were representing themselves, $300,000 during settlement negotiations in September 2010 and respondents' attorney only managed to secure an additional $125,000 for his clients. Because this offer was not reduced to writing and the statute directs us to consider "the last written

The state contends that the district court misapplied the *Paulson* factors by weighing certain factors more heavily than others and by not providing enough written detail on each factor. Contrary to the state's assertion, however, the district court plainly stated that its determination regarding attorney fees took into consideration "all of the applicable circumstances and factors." The district court, being most familiar with the pertinent aspects of respondents' case, "is in the best position to evaluate the reasonableness of requested attorney fees." *Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 629 (Minn. 1988). The district court acted within its discretion in calculating the attorney-fee award. Considering the factual record as a whole, the district court's findings are supported by reasonable evidence and are not clearly erroneous.

**Affirmed.**

---

offer of compensation," Minn. Stat. § 117.031, we are not persuaded by the state's argument that we must consider the $300,000 offer which was not reduced to writing.