**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE: (302) 255-0626

Submitted: July 24, 2024
Decided: October 24, 2024

Chad M. Shandler, Esquire
Alexandra M. Ewing, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Daryll Hawthorne-Bernardo, Esquire
Timothy S. Martin, Esquire
WHITE AND WILLIAMS
600 N. King St., Suite 800
Wilmington, DE 19801

> **RE:** *NewWave Telecom and Technologies, Inc. v. Ze Jiang, et al.*
> <u>**C.A. No.: N20C-09-215 VLM CCLD**</u>

Counsel:

The Complaint in this matter was filed in October of 2020 and assigned to the Complex Commercial Litigation Division. After four years of litigation, Plaintiff NewWave Telecom and Technologies, Inc. prevailed on its direct claims as well as its defense of all counterclaims. NewWave now moves for attorneys' fees, expenses and costs. After consideration of all pleadings, for the reasons stated herein, its Motion for Attorneys' Fees is **GRANTED**. Its Motion for Costs is **GRANTED, in part, DENIED, in part**.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

On May 10, 2019, NewWave Telecom and Technologies, Inc. and 25 individual Sellers (collectively, "Sellers") executed a Stock Purchase Agreement ("SPA") and accompanying Earn-Out Agreement ("EOA") to acquire iQuartic, Inc. .[2]

---

[1] Unless otherwise noted, this Court's recitation is drawn from NewWave's Complaint ("Compl.") and all documents the parties incorporated by reference. D.I. 1.

[2] Compl., Ex. A.

-1-

NewWave brought this action against five of the twenty-five sellers (collectively, "Defendants") alleging breach of the SPA, fraud in the inducement, and declaratory judgment regarding funds held in escrow.[3]  It further asserted iQuartic misrepresented the functionality of its Artificial Intelligence ("AI") and Natural Language Processing ("NLP") system,[4] in breach of the "fully functional" representation and warranty under the SPA.[5]

NewWave sought $1,808,016 in damages for its breach-of-contract claim[6] and $6,950,879 for its fraud/fraud in the inducement claim.[7]  An eight-day bench trial spanned from April 3, 2023, until April 13, 2023.[8]  On September 27, 2023, the Court issued its Post-trial Opinion, finding in favor of NewWave on all claims.[9]  Within that opinion, the Court declined to speculate as to the proper measure of damages and directed the parties to present supplemental expert opinions as to the value of the assets subject to the SPA.[10]  Thereafter, the Court issued a Post-Trial Order on Asset Valuation.[11]  In a subsequent letter to counsel, the Court clarified that "[NewWave] is entitled to $5,796,233.37 on its fraud claim and $558,016 on its breach of contract claim."[12]

On March 5, 2024, relying on the SPA's indemnification rights provision, NewWave filed a Motion for Attorneys' Fees and Expenses requesting a total of

---

[3]   Compl. ¶ 86-105.

[4]   *Id*.

[5]   *Id*. ¶ 88.

[6]   *See* Defs.' Answering Br. in Opp'n to Pl.'s Mot. for Attorneys' Fees and Expenses, D.I. 268 (hereafter "Defs.' Ans. Br.") ($558,016 in compensatory damages and the $1,250,000 Cap Amount defined in the SPA).

[7]   *Id.*

[8]   *See* Trial Transcripts, D.I. 224-231.  That trial was heard, and the verdict rendered by a now-retired Complex Commercial Litigation Division judge.

[9]   The Court found in favor of NewWave and against Defendants on: Count I: Breach of Contract; Count II: Fraud in the Inducement; Count III and Counterclaim VI: Declaratory Judgment; Counterclaim IV: Tortious Interference with Business Relations; Counterclaim V: Defamation, and Breach of Contract – Earn-out Agreement. D.I. 239 at 8-21.

[10]   *Id.* at 23.

[11]   D.I. 253.

[12]   D.I. 263.

$4,147,395.50 in attorneys' fees and other professional expenses.[13] Disputing the request for this award, Defendants contend the SPA's indemnification obligations differ for breach-of-contract and fraud claims,[14] such that any award for attorneys' fees and expenses should be limited to $625,000 held in escrow.[15]

On the same day, NewWave filed another Motion for Costs requesting costs and expenses totaling $155,935.08 incurred in prosecuting and defending the action,[16] as well as $112,067.33 of recoverable expenses in the form of fees and travel expenses directly associated with its technical expert, Bryan Bergeron, M.D. ("Dr. Bergeron"), and its damages expert, Brian Burns, CPA ("Mr. Burns").[17] NewWave also seeks $37,091 in expenses related to trial technology support and $6,776.75 for trial transcript costs.[18]

## II.   STANDARD OF REVIEW

Delaware Rule of Civil Procedure 54(d) provides that "Except when express provision therefor is made either in a statute or in these Rules or in the Rules of the Supreme Court, costs shall be allowed as of course to the prevailing party…"[19] Delaware follows the "American Rule" where each party bears the costs of their own attorneys' fees and expenses regardless of the outcome.[20]   Delaware Courts, however, allows parties to contractually shift that burden.[21]   Under Delaware law, an indemnification provision is construed to include a claim for attorneys' fees even if such provision does not expressly mention attorneys' fees.[22]

---

[13]   Pl.'s Mot. for Atty's Fee's (D.I. 251). This consists of attorneys' fees charged by two law firms with $3,920,367 being requested for Holland and Knight's fees and $227,028.50 being requested for Richards Layton & Finger's fees.

[14]   Defs.' Ans. Br. at 3.

[15]   *Id*.

[16]   Pl.'s Mot. for Costs (D.I. 252).

[17]   *Id*.

[18]   *Id*.

[19]   Del. Super. Ct. Civ. R. 54(d).

[20]   *In re Del. Pub. Sch. Litig*., 312 A.3d 703, 710 (Del. 2024).

[21]   *Gener8, LLC v. Castanon*, 2023 WL 6381635, at *35 (Del. Ch. Sept. 23, 2023).

[22]   *Northwestern Nat'l Ins. Co. v. Esmark, Inc*., 1996 WL 527349, at *6 (Del. Super. Aug. 9, 1996).

## III. DISCUSSION

NewWave relies on the indemnification provisions of SPA Section 7.2 for its request of attorneys' fees.[23] Defendants argue that because the SPA carves out separate limitations for breach-of-contract and fraud indemnification, the attorneys' fees should be assessed individually.[24]

---

[23] Defs.' Ans. Br., Ex. 1 (hereafter "SPA") Section 7.2 provides, in relevant part:

(a) Each Seller (severally, based on such Seller's Pro Rate Share and not jointly) agrees to indemnify and hold harmless the Buyer, its Affiliates and the Company [iQuartic] (from and after the Closing), and each of their respective equity holders, trustees, directors, managers, officers, employees and agents (collectively, the "Buyer Parties"), against, from and in respect of any and all Losses that are incurred by them based upon, arising out of or otherwise in respect of:

(i) the inaccuracy in or breach of any representation or warranty made by the Company [iQuartic] in this Agreement or in any statement or certificate delivered by or on behalf of the Company [iQuartic] pursuant to Section 6.1; . . .

\*　　　　　\*　　　　　\*

(vi) any Fraud-Type Claim;

\*　　　　　\*　　　　　\*

(vii) enforcing any of the Buyer Parties' indemnification rights provided for under this Section 7.2(a); . . .

\*　　　　　\*　　　　　\*

(b) Each Seller (severally and not jointly and with respect to any other Person) agrees to indemnify and hold harmless the Buyer Parties against, from and in respect of any and all Losses that are incurred by them based upon, arising out of or otherwise in respect of:

\*　　　　　\*　　　　　\*

(i) the inaccuracy in or breach of any representation or warranty made by such Seller in this Agreement or in any statement or certificate delivered by or on behalf of such Seller pursuant to Section 6.1; . . .

\*　　　　　\*　　　　　\*

(iii) enforcing any of the Buyer Parties' indemnification rights provided for under this Section 7.2(b).

[24] Defs.' Ans. Br. at 3.

In support, Defendants rely on Section 7.4(a) which states, in relevant part:

"…[T]he Buyer parties will not be entitled to receive any indemnification payments under Section 7.2(a)(i) or Section 7.2(b)(i) until aggregate amount of Losses incurred by the Buyer parties is $190,000" (basket amount).[25]

Section 7.4(b) states:

"…[T]he maximum aggregate amount of indemnification payments for which Sellers will have liability to the Buyer Parties [for breach-of-contract claims] under this Section 7, ***other than with respect to…Fraud-Type claims,*** with respect to Section 7.2(a)(i) or Section 7.2(b)(i) will not exceed the cap amount."[26]

The "Cap Amount" provided in the SPA is $1,250,000.[27]

Defendants further assert that, pursuant to Section 7.4(c),[28] NewWave's "sole and exclusive source" of indemnification payments other than for fraud claims, with respect to Section 7.2(a)(i) and 7.2(b)(i) is the amount in escrow and then offset by the buyer.[29] Accordingly, Defendants argue that the breach-of-contract indemnification is limited to $625,000 held in escrow.[30] To accept Defendants' argument would require this Court to ignore the provisions of the SPA and established legal principles.

## A. ATTORNEYS' FEES APPROPRIATE AS CLAIMS ARE NOT SEPARABLE.

Here, after an eight-day bench trial, NewWave prevailed not only on its direct claims but also in defending all counterclaims put forth by the Defendants. The

---

[25] *Id.*

[26] *Id.* (emphasis added).

[27] *Id.*

[28] Section 7.4(c), in relevant part, provides that: "…the sole and exclusive source to satisfy any claim for indemnification pursuant to Section 7.2(a)(i) or Section 7.2(b)(i) other than…Fraud-Type Claims shall be. . . first, the Escrow Account . . . second . . . offset by the buyer."

[29] Defs.' Ans. Br. at 4.

[30] *Id.* at 5.

Court later provided a breakdown and awarded NewWave damages of $5,796,233.37 on the fraud claim and $558,016 for breach of contract.[31]

The fraud claim is carved out from any limitation under Section 7.4, and thus NewWave's indemnification rights under Sections 7.2(a)(vii) and 7.2(b)(iii) are not subject to Section 7.4's limitations. Defendants' reliance on Section 7.4 and its language does not support a claim-by-claim assessment of attorneys' fees. Nor do the provisions in the SPA call upon the Court or a prevailing party to parse out or limit Defendants' indemnification obligations as proposed.

Even assuming Defendants' read of Sections 7.2 or 7.4 was accurate, it is also true that while Delaware does generally adhere to the American Rule for attorneys' fees, certain instances of egregious or fraudulent behavior allow for an award of attorneys' fees as part of damages. Here, the Court made its finding as to the proper damage award for the fraud claim. Defendants cannot limit their obligations under the SPA that expressly prohibits protection for its fraudulent behavior.[32] And this Court will not limit NewWave's right to indemnification under the SPA.

Here, the breach-of-contract and fraud claims have the same core of facts that relate to the functionality of the medical coding system, which Defendants represented and warranted to NewWave as part of the SPA. The claims overlapped and cannot be reviewed as discrete claims for purposes of parsing out attorneys' fees.[33] And "[a]bsent any qualifying language that fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing

---

[31] D.I. 263.

[32] *See generally ABRY Partners V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006) (observing, when addressing the potential application of a provision that barred recission claims and limited a buyer's damages on fraud-based recission claims: "[T]his court consistently has respected the law's traditional abhorrence of fraud in implementing [its] reasoning.); *id.* at 1061 ("Delaware courts have shared this distaste for immunizing fraud."); *Online HealthNow, Inc. v. CIP OCL Investments, LLC*, 2021 WL 3557857, at*11 (Del. Ch. Aug. 12, 2021) ("Delaware law will not countenance the seller's or its affiliates' attempt to escape the consequences of their fraud by pointing to other provisions within the same fraudulently-procured contract that purport to limit the seller's liability.").

[33] *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

party to fees will usually be applied in an all or nothing manner."[34]   NewWave prosecuted and defended all claims successfully.   They are entitled to recover attorneys' fees under the SPA without the limitations proposed by Defendants.

### B. "PRO RATA SHARE" ARGUMENT FOR ATTORNEYS' FEES WAIVED.

Defendants further argue that the indemnification provision provides that the Defendants may only be held liable with respect to their pro rata share of any damages or fees awarded by this Court.

In its post-trial opinion, the Court briefly stated that with respect to the breach-of-contract claim, Section 7.2(b) requires indemnification by each seller severally and not jointly.[35]  The Court further acknowledged that this argument had not been previously made by Defendants.[36]  NewWave contends this argument has been waived and even if such argument had been raised, the attorneys' fees cannot be limited on a pro rata basis because parties cannot limit recovery for fraud claims if Defendants were aware of the fraud.[37]  The Court agrees.  To the extent Defendants seeks to put a cap on damages or liability or is otherwise attempting to relitigate claims, these post-trial arguments are deemed waived.[38]

### C. ATTORNEYS' FEES ARE REASONABLE.

Defendants next argue the requested attorneys' fees are unreasonable as disproportionate to the subject matter and the result of the lawsuit.[39] The party seeking an award of attorneys' fees bears the burden of establishing that the fees sought are reasonable.[40]  In support, Defendants assert that NewWave only received

---

[34]   *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009).

[35]   Post Trial Op. (D.I. 239).

[36]   Letter Order (D.I. 263) ("To the best of my recollection, the first time the Court was aware of Defendants' position – that the SPA applies various legal and monetary limitations to Plaintiff's claims – was after trial as part of Defendants' Response to Plaintiff's Motion for Clarification.").

[37]   *See* Pl.'s Reply Br. at 18-22 (D.I. 270).

[38]   *Zhou v. Deng*, 2022 WL 1024809, at *6 (Del. Ch. Ct. Apr. 6, 2022) ("Arguments that are not raised until pre-trial briefing or after may be deemed waived by the Court.").

[39]   Defs.' Ans. Br. at 10.

[40]   *Roma Landmark Theaters, LLC v. Cohen Exhibition Co., LLC*, 2021 WL 5174088 (Del. Ch. Ct. Nov. 8, 2021).

83% of its requested relief yet staffed this lawsuit with four times the personnel that Defendants engaged for legal counsel, which contributed to excessive billing and exorbitant fees.[41]

When evaluating attorneys' fees, the Court is not required to do a line-by-line review of the billable hours or invoices charged, rather the Court is only tasked with weighing the factors of Delaware Lawyers Rule of Professional Conduct 1.5(a).[42]

This case has been ongoing for over four years.[43]  Obviously, an extensive amount of time and labor was expended to litigate the matter successfully.  The litigation also focused on the functionality of an artificial intelligence and natural language processing system that involved complicated technological processes.[44] Post-trial, the Court requested counsel to present supplemental expert opinions as to the value of the assets subject to the SPA, which yielded the Court Post-Trial Order on Asset Valuation.[45]

Defendants argue the attorneys' fees are also unreasonable because they exceed that which was billed by Defendants' counsel.[46]  This argument is without merit.  This figure does not include work provided on a *pro bono* basis by George J. Lavin, III, Esquire, who was a significant member of the defense team.[47] Furthermore, Defendants' break-down of attorneys' fees only dates back to August 2022, with no information as to the two years prior when the case began in October

---

[41]   *Id.*

[42]   *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *8 (Del. Ch. July 7, 2023). In determining the reasonableness of fees, the Court looks to:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and, (8) whether the fee is fixed or contingent. DELAWARE LAWYERS RULES OF PROFESSIONAL CONDUCT 1.5(a).

[43]   The Complaint was filed on October 5, 2020 (D.I. 1).

[44]   *See* Compl.

[45]   D.I. 253.

[46]   D.I. 252. Comparing White and Williams LLP billing at $883,957.44.

[47]   *See* Order Pro Hac Vice (D.I. 76).

2020.[48]   By contrast, NewWave submitted numerous affidavits and exhibits in support of their requested fees.[49]

At bottom, the complexity of the case—in combination with the years spent in litigation—and the experience and credentials of NewWave's advocates who prevailed in this litigation leads the Court to conclude that their attorneys' fees are reasonable and consistent with a rate customary for legal fees charged in this locality for similar services by similar practitioners.

### D. COSTS

NewWave further seeks a total of $155,935.08 in costs and expenses incurred in prosecuting and defending this action.[50]   Specifically, NewWave requests $112,067.33 of recoverable expenses in the form of fees and travel expenses directly associated with the testimony of its technical expert, Bryan Bergeron, M.D., and its damages expert, Brian Burns, CPA.[51]  NewWave also requests $84,471.80 for Dr. Bergeron's total time including lodging, travel expenses, and food expenses.[52]  And $27,596.80 in expert fees for Brian Burns.

### 1. Expert Witness Fees Are Appropriate.

Expert witness fees are limited to time spent attending court for the purposes of testifying.[53]   "Witness fees allowed under § 8906[54] should be limited to time necessarily spent in attendance upon the court for the purpose of testifying.  This

---

[48]   Defs.' Ans. Br., Aff. (D.I. 268).

[49]   *See* D.I. 251 (Ex. A, B, C, D, E, F, 1, 2).  The court is not required to conduct a line-by-line review of all billable hours.

[50]   D.I. 252.

[51]   Pl.'s Mot. for Costs (D.I. 252).

[52]   *See* Elledge Affidavit, dated March 4, 2024, at ¶ 3 (D.I. 252) ($79,300 for Dr. Bergeron total time, $589.60 in travel expenses, $4,394.28 in lodging expenses, and $187.15 in food expenses).

[53]   *Kaczmarczyk v. Liberty Mut. Fire. Ins. Co.*, 2014 WL 1316192, at *1 (Del. Super. Ct. Feb. 12, 2014) ("Expert witness fees are 'limited to time spent attending court for the purpose of testifying' and reasonable costs incurred in traveling to and from the courthouse.").

[54]   DEL. CODE ANN. tit. 10, § 8906 (2024) ("The fees for witnesses testifying as experts or in the capacity of professionals in cases in the Superior Cour . . . shall be fixed by the Court in its discretion, and such fees so fixed shall be taxed as part of the costs in each case and shall be collected and paid as other witness fees are now collected and paid.").

does not include time spent in listening to other witnesses for 'orientation', or in consulting and advising with a party or counsel or other witnesses during the trial."[55] In addition, travel time to and from the courthouse and time spent waiting in the courthouse to be called to the witness stand may be considered as "time necessarily spent in attendance upon the court."[56]

### a. <u>Dr. Bergeron</u>

Dr. Bergeron testified on two trial days, April 6, 2023, as a part of NewWave's case-in-chief and on rebuttal on April 13, 2023.[57] NewWave requests costs associated with Dr. Bergeron's trial and preparation days from April 1-7, and April 10-13, 2023, totaling $79,300 at a rate of $650 per hour.[58] The Court must determine whether the days not testifying may be considered as "time necessarily spent in attendance upon the court."[59]

Here, the trial lasted from April 3 through 13, 2023.[60] Yet, NewWave requests costs of $13,325 for reviewing codes and on-site review/prep pre-trial for April 1 and April 2, 2023. NewWave also seeks $5,200 for April 7, 2023,[61] which was a Court holiday (Good Friday).[62] Witness fees should be limited to time spent in attendance upon the court for the purposes of testifying. These costs should be deducted from the requested total. Therefore, with April 1, 2, and 7 deducted, NewWave's request for $79,300 should be reduced $13,325 for pre-trial preparation days and $5,200 for the Court holiday.

On the other hand, April 3-6 and April 10-13 were all trial days where Dr. Bergeron was waiting to possibly be called to the witness stand making those days'

---

[55] *Sliwinski v. Duncan*, 1992 WL 21132, at *3 (Del. 1992).

[56] *Id*. (quoting *Stevenson v. Henning*, 268 A.2d 872, 875 (Del. 1970)).

[57] *See* Elledge Affidavit, dated March 4, 2024, at ¶ 3 (D.I. 252).

[58] *Id*.

[59] *Sliwinski*, 1992 WL 21132, at *3.

[60] *See* Trial Transcripts (D.I. 224-231).

[61] Pl.'s Mot. for Costs, Ex. A.

[62] April 7, 2023, was a Court holiday and therefore, the Superior Court was closed. *See* https://www.calendardate.com/good_friday_2023.htm (last visited Oct. 23, 2024).

"time necessarily spent in attendance upon the court."[63] The invoice provided by NewWave shows charges on trial days of 13 hours.[64] The total in-trial time was 50.9 hours.[65] Yet, the charges reflect 93.5 hours requested for trial days.[66] Adjusting the time, one hour may be added to each trial day for travel. Dr. Bergeron may be compensated for 58.9 hours. Therefore, NewWave is awarded $38,285 in costs relating to Dr. Bergeron's expert witness fees.

### b. <u>Brian Burns</u>

NewWave requests $27,596.30 in expert fees for Brian Burns's expertise associated with the trial preparation and his trial testimony.[67] NewWave only provided an invoice indicating charges from March 1 to April 13, 2023, with no itemized breakdown of the costs associated with work provided.[68] This Court "will not grant an award of costs if such request is not substantiated by the prevailing party."[69] Without even an hourly rate provided regarding Mr. Burns, NewWave has not provided justification for $27,596.30 in fees where this Court cannot review the justification or itemized breakdown for the amount requested. Without substantiating information, an award for this amount related to Mr. Burns is not proper.[70]

---

[63] *Payne v. Home Depot*, 2009 WL 659073, at *7 (Del. Super. Ct. Mar. 12, 2014) ("Generally, the prevailing party may only recover those expert witness fees associated with time spent testifying or waiting to testify, along with reasonable travel expenses.").

[64] Pl.'s Mot. for Costs, Ex. A.

[65] *See* Trial Transcripts (D.I. 224-231).

[66] *See* Pl.'s Mot. for Costs, (Ex. A).

[67] *See* Elledge Affidavit, dated March 4, 2024, at ¶ 3 (D.I. 252); *see also* Pl's Mot. for Costs (D.I. 252).

[68] Pl's Mot. for Costs, Ex. B.

[69] *Russo v. Medlab Clinical Testing, Inc.*, 2001 WL 34082277 (Del. Super. Ct. Nov. 14, 2001); *see also Bangs v. Follin*, 2017 WL 829663 (Del. Super. Ct. Mar. 17, 2017) (finding a party seeking costs for an expert witness "must furnish the Court with an itemization by rate and time spent before such expenses will be awarded").

[70] The Court is no way dismissive of Mr. Burns's time and participation. This ruling results solely from the Plaintiff's failure to provide proper support for its application and earn its recovery of costs it says it incurred.

## 2. Travel and Lodging Expenses

NewWave requests $589.50 in travel expenses, $4,394.28 in lodging expenses, and $187.15 in food expenses.[71] Defendants oppose the expense of $4,394.28 for the Hotel Dupont and requests a limit of two nights lodging consistent with the number of days Dr. Bergeron testified in Court.[72] Travel expenses, lodging, and meals are all recoverable expenses.[73] The amount sought to be recovered is consistent with the lodging expense while waiting to be called to testify in rebuttal on April 13, 2023.[74]

## 3. Trial Technology Support

NewWave requests $37,091 for costs associated with trial technology support, namely from Mr. Daniel White III, Trial Services Manager of NewWave's counsel. In support, NewWave provides invoices to support a rate of $290 per hour for 127.9 hours.[75] "This Court will allow recovery only to the extent of the costs of technology support services that were provided during trial."[76] NewWave's costs associated with trial technology support include work prior to trial,[77] and costs associated with trial technology support on a Sunday and Court holiday.[78] The invoices also reflect billing above the trial hours.[79] Trial transcripts confirm that the total in-trial hours were 50.9 hours.[80] Therefore, NewWave is entitled to Mr. White's hourly rate of $290 for each in-trial hour totaling $14,761 in costs for trial technology support.

---

[71] Elledge Affidavit, dated March 4, 2024, at ¶ 3 (D.I. 252).

[72] Defs.' Opp. To Pl.'s Mot. (D.I. 267).

[73] *Concord Plaza Associates v. Honeywell, Inc.,* 1988 WL 32018, *3 (Del. Super. Ct. Mar. 23, 1988).

[74] Elledge Affidavit, dated March 4, 2024, at ¶ 3 (D.I. 252).

[75] Pl's Mot. for Costs, Ex 1.

[76] *In re Bracket Holding Corp. Litig.*, 2020 WL 764148, at *13 (Del. Super. Ct. Feb. 7, 2020) ("The Court will allow recovery only to the extent of the cost of technology support services that were provided during trial.").

[77] Pl.'s Mot. for Costs at 4-5.

[78] As noted before, April 7, 2023, was a Superior Court holiday; April 9, 2023, was a Sunday.

[79] *See* Pl's Mot. for Costs, Ex 1.

[80] *See* Trial Transcripts (D.I. 224-231).

### 4. Trial Transcript Costs

NewWave requests $6,776.75 in costs for trial transcripts.  The cost of trial transcripts is not a necessary expense and not usually awarded to prevailing parties.[81]  NewWave cannot recover costs for trial transcripts.

## IV.  CONCLUSION

NewWave's Motion for Attorneys' Fees and Expenses is **GRANTED**.  NewWave's Motion for Costs is **GRANTED, in part, DENIED, in part.**[82]

The parties shall confer and submit a form of order implementing these findings no later than November 7, 2024.

**/s/ *Vivian L. Medinilla***

_____
Vivian L. Medinilla
Judge

cc:  Prothonotary-Civil

---

[81]  *Dreisbach v. Walton*, 2014 WL 5426868, at *5 (Del. Super. Ct. Oct. 24, 2014); *see also Ronald G. Connolly, M.D., P.A. v. Russell J. Labowitz, M.D., P.A.*, 1987 WL 28316, at *2 (Del. Super. Ct. Dec. 15, 1987) (holding trial transcripts are not costs of the case).

[82]  For ease of reference, NewWave is awarded recovery of  $38,285 for Dr. Bergeron's total time, $14,761 in costs for trial technology support, $589.50 in travel expenses, $4,394.28 in lodging expenses, and $187.15 in food expenses.  This totals $58,216.93 on the motion for costs.

-13-